WEST BLOOMFIELD HOSPITAL v CERTIFICATE OF NEED BOARD

Docket Nos. 102746-102750. Argued March 6, 1996 (Calendar No. 11).
   Decided July 16, 1996.

   In a unanimous opinion by Justice LEVIN, the Supreme Court
   held:

   The Court of Appeals erred in ruling that the failure to adopt a
   state medical facilities plan automatically precluded the Depart-
   ment of Public Health from processing applications for certificates

of need and in requiring as a remedy that the certificates of need be issued to all applicants.

1. The certificate of need program was initiated in an effort to contain health care costs by eliminating the proliferation of unnecessary medical treatment facilities. To achieve this end, the Legislature created a permit system, requiring the obtaining of a certificate of need as a prerequisite to beginning any new construction or undertaking any modification of an existing facility. Although consideration of a community's need was of highest priority, the Legislature also mandated that other factors were to be considered, including whether there were other less costly alternatives, whether there would be adequate personnel to staff the facility, who would have access to the facility, and what the new facility's effect would be on existing facilities. The certificate of need statute contemplated that determination of need was to be consistent with a published state medical facilities plan.

2. Under the circumstances presented, the department was not necessarily required to wait for the state medical facilities plan to be formally promulgated before reviewing the respondents' applications. Rather, it was obliged to conduct its review employing a methodology that assured that the goals of the statute would be met and that its decision was fair and well reasoned in accordance with the statutory criteria. Because the state medical facilities plan had not been formally adopted, the construction of the certificate of need statute by the department, as set forth in the acute-care-bed-need methodology and guidelines developed from the proposed plan was not entitled to the deference that should be given an agency's construction in rules adopted pursuant to the mandate of the enabling legislation.

3. The appellate courts will give the agency's construction such weight as is appropriate on full consideration of the statutory criteria and the record of the case on review. When an agency fails to adopt rules requisite to the processing of an application, and nevertheless conducts a hearing and grants or denies the application, it does not necessarily follow that the agency's decision is automatically invalid or subject to reversal. Rather, on judicial review, a court may excuse a procedural deficiency if the rule in question merely assists the agency in the exercise of its discretion and there is no substantial prejudice to the complaining party.

Reversed and remanded.

Justices RILEY and WEAVER took no part in the decision of this case.

208 Mich App 393; 528 NW2d 744 (1995) reversed.

*Foster, Swift, Collins & Smith, P.C.* (by *Gary J. McRay, Eric E. Doster,* and *Stephen J. Rhodes*), for petitioner-appellee West Bloomfield Hospital.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *James C. Foresman* and *David L. Kaser*), for petitioners-appellees Huron Valley Hospital and Sisters of Mercy Health Corporation.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Ronald J. Styka,* Assistant Attorney General, for the respondent-appellant Department of Public Health.

*McGinty, Jakubiak, Frankland, Hitch & Henderson, P.C.* (by *Kenneth P. Frankland*), for respondent-appellee Pontiac Osteopathic Hospital.

Amicus Curiae:

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *David E. S. Marvin* and *Wendy M. Guilfoyle*), for The Economic Alliance for Michigan.

Levin, J. The Department of Public Health denied the applications of the seven respondents for a certificate of need.

The Certificate of Need Board, on review of the decision of the department, denied respondents' applications in six of the seven cases. The board reversed the department's denial of Pontiac Osteopathic Hospital's application, and granted it a certificate of need.

The circuit court affirmed the decision of the Certificate of Need Board with regard to its denial of all applications except Pontiac Osteopathic Hospital and reversed the board's grant of a certificate of need to

the hospital. The Court of Appeals reversed and granted each applicant a certificate of need. We now reverse and remand the case to the Court of Appeals for further proceedings consistent with this opinion.

I

In 1983, three hospital facilities applied to the Department of Public Health, pursuant to part 221 of the Public Health Code,[1] for certificates of need that would allow them to undertake construction to add new hospital beds in the Pontiac "subarea" of Oakland County.[2] Huron Valley Hospital sought to add 150 beds to its existing Pontiac area, 153-bed hospital facility. Pontiac Osteopathic Hospital applied for a certificate to build a facility in Clarkston containing 112 beds, while correspondingly decreasing the number of beds in its Pontiac facility. West Bloomfield Hospital applied for permission to construct a new 200-bed facility in the Pontiac region and to delicense the same number of beds in two or more of its other hospitals in other subareas.

The department issued notices to all interested parties to submit proposals for new facilities in the subarea. Four additional interested parties submitted applications.[3] The department conducted a comparative review of the parties' applications and concluded

---

[1] MCL 333.22101 *et seq.*;  MSA 14.15(22101) *et seq.*  Part 221 was repealed and replaced effective October 1, 1988, with part 222, MCL 333.22201 *et seq.*;  MSA 14.15(22201) *et seq.*, by 1988 PA 332.

[2] This subarea is also known as subarea 48.

[3] Only four of the original seven parties are still involved in this litigation.

that there was no need for any new facilities in the Pontiac subarea.[4]

The unsuccessful applicants filed exceptions with the board, claiming that the department committed legal error by denying their applications without assuring that its decision was "consistent with" the state medical facilities plan, as required by part 221 of the Public Health Code.[5] The board rejected this argument, and affirmed the decision of the hearing officer with respect to six of the applicants. The board reversed, on the ground of need, with respect to Pontiac Osteopathic Hospital and granted it alone a certificate.[6]

Five of the original applicants appealed, this time in the Ingham Circuit Court.[7] The court affirmed the denial of the certificate of need to the appellants, and reversed the grant of the certificate of need to Pontiac Osteopathic Hospital.

The five remaining applicants appealed in the Court of Appeals. In a split decision, the Court found the

---

[4] In an opinion filed on September 5, 1984, it denied all seven applications.

[5] Section 22132, since repealed, provided:

In reviewing a request for a certificate for construction of, conversion of, addition to, or modernization of a health facility, including a project to correct a licensing deficiency, approval shall be based on, but not limited to, a demonstrated current and future need for the facility or a part of the facility. *The determination of need shall be consistent with the criteria and guidelines published for this purpose in the state medical facilities plan.* [MCL 333.22132; MSA 14.15(22132) (emphasis added).]

[6] The board indicated that, unlike the other applicants, Pontiac Osteopathic Hospital needed to build a new facility because the present one was inadequate for the proper teaching and training of physicians.

[7] Pontiac Osteopathic Hospital, the board, and the department were named as respondents.

words "shall be consistent" in the statute determinative, and concluded that "[t]he failure of the department to adopt and follow a facilities plan, where such action was mandated by law, was error." The Court of Appeals directed the circuit court to issue certificates of need to all the parties. 208 Mich App 393, 399-400; 528 NW2d 744 (1995).[8]

II

At issue is whether the department committed legal error in denying appellees' applications without first assuring that its decision was consistent with a state medical facilities plan and, if so, whether the Court of Appeals decision to grant each medical facility a certificate of need was a proper remedy for this error.

The certificate of need program was initiated by 1972 PA 256 in an effort to contain health care costs by eliminating the proliferation of unnecessary medical treatment facilities.[9] To achieve this goal, the Legislature created a permit system centered on the idea that permission to build a new facility or modify an existing one would only be granted when there was need within the community for such growth. Section 22111 of the certificate of need statute provided:

---

[8] The Court of Appeals denied the department's motion for rehearing. The department and the board then filed an application for leave to appeal, which this Court granted. 450 Mich 874 (1995).

[9] See *Greenbriar Convalescent Center, Inc v Public Health Dep't,* 108 Mich App 553, 558; 310 NW2d 812 (1981) ("The purpose underlying both state and federal [certificate of need] statutes is to contain the costs of medical care by restricting the construction of unneeded health facilities"). See, generally, Payton & Powsner, *Regulation through the looking glass: Hospitals, Blue Cross, and certificate of need,* 79 Mich L R 203 (1980).

A certificate of need program shall be established and shall:

(a) Provide for review and determination of need before new institutional health services, facilities, and organizations are offered or developed or substantial expenditures are undertaken in preparation for the offering or development.

(b) Provide that only needed services, facilities, and organizations shall be offered or developed in this state. [MCL 333.22111; MSA 14.15(22111).]

Obtaining a certificate of need was made a prerequisite to beginning any new construction or undertaking any modification of an existing facility. Section 22113 provided that no new health care facility may begin to operate, "make a change in bed capacity, make a change in service, or undertake a capital expenditure for the construction, conversion, addition to, or modernization in excess of $150,000 . . . without first obtaining a certificate of need which documents a demonstrated need and grants permission for the proposed project." MCL 333.22113; MSA 14.15(22113).

Although consideration of a community's need was of highest priority, the Legislature also mandated, in subsections 22131(1) and (2), that other factors were to be considered before a certificate of need was granted. An applicant was required to indicate, among the considerations, whether there were other less costly alternatives, whether there would be adequate personnel to staff the facility, who would have access to the facility, and what the new facility's effect would be on existing facilities.

The certificate of need statute contemplated that there would be a state medical facilities plan in the application process. It provided, in § 22132, that "[t]he

determination of need shall be consistent with the criteria and guidelines published for this purpose in the state medical facilities plan." MCL 333.22132; MSA 14.15(22132).

A

The Court of Appeals concluded, on the basis of § 22132, particularly the phrase "shall be consistent with the . . . state medical facilities plan," that the department was without the power either to grant or deny appellees' applications without first promulgating a state medical facilities plan. The Court of Appeals further concluded that the remedy was to grant certificates of need to all the applicants then still before the Court.

The department acknowledges that no state medical facilities plan had been adopted at the time it reviewed the applications, but contends that it was proper under the circumstances to employ the acute-care-bed-need methodology and guidelines developed from the proposed plan as surrogates for an actual plan. At the time all relevant actions were taken, the department had proposed a state medical facilities plan as statutorily required.[10] But the Statewide Health Coordinating Council, a distinct executive body charged with officially approving the plan, never

---

[10] Section 22123(1) of the Public Health Code, since repealed, provided:

The state agency [the Office of Health and Medical Affairs in the Department of Management and Budget] and the [Public Health Department] shall enter into an agreement under which the department, with the supervision of the state agency, shall develop and administer the state medical facilities plan and administer the state certificate of need program . . . . [MCL 333.22123(1); MSA 14.15(22123)(1).]

gave final approval.[11] The appellees maintain that the department withdrew its proposed plan from the promulgation process. The department counters that the failure formally to adopt a plan was a result of the council's failure to act.

B

We conclude that under the circumstances presented, the department was not necessarily required to wait for a state medical facilities plan to be formally promulgated before reviewing respondents' applications. We also disagree with the Court of Appeals decision to grant automatically certificates of need to all remaining applicants.

To be sure, § 22132 contemplated that a state medical facilities plan would be promulgated before review of certificate of need applications would be undertaken. Nevertheless, this Court has said that "[t]he words of a statute . . . should not be construed in the void but must be read together to effectuate the intention of the legislature." *Dussia v Monroe Co Employees Retirement System*, 386 Mich 244, 248; 191 NW2d 307 (1971), citing *People v Burns*, 5 Mich 114 (1858). Because a state medical facilities plan had not been formally adopted, the department was obliged to conduct its review employing a methodology that assured that the goals of the statute would be met and its decision was fair and well-reasoned in accordance with the statutory criteria.

The question on judicial review is whether the agency action, granting or denying, is consistent with

---

[11] See the Michigan Health Planning and Resources Development Act, 1978 PA 323, MCL 325.2201 *et seq.*; MSA 14.526(51) *et seq.*

the statutory criteria. Because a state medical facilities plan was not formally adopted, the construction of the certificate of need statute by the department, as set forth in the acute-care-bed-need methodology and guidelines developed from the proposed plan, was not entitled to the deference that should be given an agency's construction in rules adopted pursuant to the mandate of the enabling legislation.

The appellate courts, on judicial review, will give the agency's construction such weight as it concludes is appropriate on full consideration of the statutory criteria and the record of the case on review.

When an agency fails to adopt rules requisite to the processing of an application, and nevertheless conducts a hearing and grants or denies the application, it does not necessarily follow that the agency's decision is automatically invalid or subject to reversal. Rather, on judicial review, a court may excuse a procedural deficiency if the rule in question merely assists the agency in the exercise of its discretion and there is no substantial prejudice to the complaining party. *American Farm Lines v Black Ball Freight Service*, 397 US 532; 90 S Ct 1288; 25 L Ed 2d 547 (1970); *EEOC v Kimberly Clark Corp*, 511 F2d 1352, 1360-1361 (CA 6, 1975). As the United States Supreme Court commented in *American Farm Lines*:

> [T]he general principle [is] that "[i]t is always within the discretion of the court or administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party." [397 US 539, quoting *NLRB v Monsanto Chemical Co*, 205 F2d 763, 764 (CA 8, 1953).]

In this case, the circuit court concluded that the board acted correctly in denying all the applications except the application of Pontiac Osteopathic Hospital. The Court of Appeals did not address the merits of the Certificate of Need Board's decision and reversed on the ground that a state medical facilities plan was a necessary prerequisite clearly mandated by the certificate of need statute. As a result, the Court of Appeals did not address considerations such as those set forth in *American Farm Lines* and discussed above.

We conclude that the Court of Appeals erred in ruling that the failure to adopt a state medical facilities plan automatically precluded the department from processing applications for certificates of need and in requiring as a remedy that certificates of need be issued to all the remaining applicants. We therefore reverse its decision and remand the case to it to consider—bearing in mind the statutory mandate that, at a minimum, "approval shall be based on . . . a demonstrated current and future need for the facility"[12]—whether the circuit court correctly affirmed the action of the Certificate of Need Board with regard to all the applicants except Pontiac Osteopathic Hospital, and correctly reversed with regard to Pontiac Osteopathic Hospital,[13] and for consideration of the other issues the applicants sought to raise in the Court of Appeals. The parties on remand shall be

---

[12] MCL 333.22132; MSA 14.15(22132).

[13] A majority of the Court is of the opinion that the Court of Appeals should consider remanding to the Certificate of Need Board regarding its decision to grant Pontiac Osteopathic Hospital a certificate of need because it did not adequately justify this determination legally or factually.

provided an opportunity for further briefing and oral argument.

Reversed and remanded to the Court of Appeals.

BRICKLEY, C.J., and CAVANAGH, BOYLE, and MALLETT, JJ., concurred with LEVIN, J.

RILEY and WEAVER, JJ., took no part in the decision of this case.