WEST BLOOMFIELD HOSPITAL v CERTIFICATE OF NEED BOARD
(ON REMAND)

Docket Nos. 197324, 197325, 197326, 197327, 197328. Submitted November 20, 1996, at Detroit. Decided May 16, 1997, at 9:15 A.M. Leave to appeal sought.

West Bloomfield Hospital, Huron Valley Hospital, William Beaumont Hospital, Sisters of Mercy Health Corporation, Pontiac Osteopathic Hospital, and two other medical facilities each applied in 1983 or 1984 to the Department of Public Health for a certificate of need in order to build a new medical facility or to alter an existing medical facility. The department conducted a comparative review of the applications to gauge the effects of the proposed projects in the affected Pontiac subarea of Oakland County, acknowledged that no state medical facilities plan had been adopted as required by part 221 of the Public Health Code, MCL 333.22132; MSA 14.15(22132), now repealed, determined that the acute-care-bed-need methodology and guidelines could be used as surrogates for a state medical facilities plan, and concluded that there was no need for any of the proposed projects. The applicants appealed to the Certificate of Need Board, claiming that the department erred in denying their applications without assuring that its decision was consistent with a state medical facilities plan. The board affirmed with respect to six of the applicants, but reversed with respect to Pontiac Osteopathic Hospital, granting that hospital a certificate of need. Five of the original applicants appealed in the Ingham Circuit Court. The court, James R. Giddings, J., affirmed the denial of the certificates of need and reversed the grant of a certificate of need to Pontiac Osteopathic Hospital. The Court of Appeals, WEAVER, P.J., and TAYLOR, J. (CAVANAGH, J., dissenting), reversed, holding that the failure of the department to adopt and follow a state medical facilities plan, as mandated by part 221 of the Public Health Code, was error. The Court remanded the case to the circuit court for the issuance of certificates of need to the applicants. 208 Mich App 393 (1995). The Supreme Court reversed, holding that the Court of Appeals erred in ruling that the failure to adopt a state medical facilities plan automatically precluded the department from processing applications for certificates of need and in requiring as a remedy that certificates of need be issued to the applicants. The Supreme

Court remanded the case to the Court of Appeals, directing the Court of Appeals to determine whether the methodology employed by the department in conducting its review assured that statutory goals would be met and whether the department's decision was fair and well-reasoned in accordance with statutory criteria. 452 Mich 515 (1996).

On remand, the Court of Appeals *held*:

1. The circuit court did not misinterpret part 221 of the Public Health Code in concluding that the department has the discretion to deny an application for a certificate of need even where all the other statutory criteria are satisfied if there is no need for the proposed project. This interpretation is consistent with the Supreme Court's opinion in this case.

2. Use of the acute-care-bed-need methodology to determine future bed need was proper. The department's failure to promulgate the methodology as an administrative rule is a procedural deficiency that can be excused because the methodology merely assisted the department in the exercise of its discretion and there was no substantial prejudice to the applicants from use of the methodology. The methodology was better at determining need than the applicants' proposed methods and its use has since been mandated by the Legislature until other standards are approved.

3. The dual role of an assistant attorney general as senior attorney for the Department of Public Health and as legal advisor to the Certificate of Need Board, by itself, did not violate § 79 of the Administrative Procedures Act, MCL 24.279; MSA 3.560(179), which requires an impartial hearing by an unbiased hearing officer, or § 82 of the APA, MCL 24.282; MSA 3.560(182), which restricts ex parte communications in administrative proceedings.

4. The department did not err in reviewing Huron Valley Hospital's application for a certificate of need under 1978 PA 368 rather than 1972 PA 256. The application, which was held in abeyance pending the outcome of prior litigation, had to be reviewed as part of a comparative review of other applications that were subject to 1978 PA 368. Thus, Huron Valley Hospital's application had to be reviewed under 1978 PA 368 in order to make an accurate comparison. An unsigned stipulation that Huron Valley Hospital's application would be reviewed under 1972 PA 256 is not indicative of a valid agreement for such review.

5. The decision to deny Huron Valley Hospital's application was not contrary to the great weight of the evidence, nor was it arbitrary and capricious.

6. The department did not err in counting against Huron Valley Hospital 350 beds that had been approved for Pontiac General Hos-

pital when both hospitals earlier had applied for certificates of need. The denial of that prior application by Huron Valley Hospital was reversed after appeals in the circuit court and the Court of Appeals, and a certificate was issued to Huron Valley Hospital. The Court of Appeals decision in that appeal does not compel the department to ignore the 350 beds previously granted to Pontiac General Hospital.

7. The record does not support West Bloomfield Hospital's claim that a formula it proposed for evaluating its application was superior to the acute-care-bed-need methodology in terms of forecasting market share and accounting for patients migrating to hospitals outside the Pontiac subarea.

8. Contrary to Pontiac Osteopathic Hospital's contention, the Certificate of Need Board does not have plenary authority to review a grant or denial of a certificate by the department. The board's review authority under MCL 333.22121(3)(b); MSA 14.15(22121)(3)(b), now repealed, is limited to determining whether the department acted in accordance with the law or arbitrarily, regardless of whether the board is reviewing an approval or a denial of a certificate of need.

9. The circuit court, in reviewing Pontiac Osteopathic Hospital's application, applied the correct and the same standard of review applied to the other applications, i.e., whether the department's decision in each instance was arbitrary or contrary to law.

10. The decision by the Certificate of Need Board to grant a certificate of need to Pontiac Osteopathic Hospital was supported by substantial evidence on the record with respect to demonstrated need and cost efficiency.

Reversed and remanded to the circuit court for issuance of a certificate of need to Pontiac Osteopathic Hospital.

TAYLOR, J., dissenting in part, stated that all the facilities are entitled to certificates because a state medical facilities plan should have been adopted as a substantive administrative rule, the absence of a plan was not a procedural deficiency that can be excused, and the applicants were therefore prejudiced by the absence of a plan.

*Foster, Swift, Collins & Smith, P.C.* (by *Gary J. McRay, Stephen J. Rhodes,* and *Eric E. Doster*), for West Bloomfield Hospital.

*Miller, Canfield, Paddock and Stone* (by *James C. Foresman* and *David L. Kaser*), for Huron Valley Hospital and Sisters of Mercy Health Corporation.

*McGinty, Jakubiak, Frankland, Hitch & Henderson, P.C.* (by *Kenneth P. Frankland*), for Pontiac Osteopathic Hospital.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ronald J. Styka, Susan I. Leffler* and *Marvin L. Bromley*, Assistant Attorneys General, for Certificate of Need Board and Department of Public Health.

ON REMAND

Before: CAVANAGH, P.J., and TAYLOR and MICHAEL J. KELLY, JJ.

CAVANAGH, P.J. This case, in which appellant facilities seek certificates of need from the Department of Public Health to build or alter their facilities, is before us for the second time. Previously, a divided panel of this Court concluded that the department's failure to adopt and follow a state medical facilities plan, as mandated by law, was error, and therefore remanded the case to the circuit court for issuance of certificates of need to all the parties. *West Bloomfield Hosp v Certificate of Need Bd*, 208 Mich App 393; 528 NW2d 744 (1995). The Supreme Court reversed, holding that the failure to adopt a state medical facilities plan does not automatically preclude the department from processing applications for certificates of need or require as a remedy that the certificates of need be issued to all applicants. *West Bloomfield Hosp v Certificate of Need Bd*, 452 Mich 515; 550 NW2d 223

(1996). The Supreme Court then remanded this case to this Court. We now affirm in part and remand.

The facts of this case are set forth in the Supreme Court's opinion:

> In 1983, three hospital facilities applied to the Department of Public Health, pursuant to part 221 of the Public Health Code, for certificates of need that would allow them to undertake construction to add new hospital beds in the Pontiac "subarea" of Oakland County. Huron Valley Hospital sought to add 150 beds to its existing Pontiac area, 153-bed hospital facility. Pontiac Osteopathic Hospital applied for a certificate to build a facility in Clarkston containing 112 beds, while correspondingly decreasing the number of beds in its Pontiac facility. West Bloomfield Hospital applied for permission to construct a new 200-bed facility in the Pontiac region and to delicense the same number of beds in two or more of its other hospitals in other subareas.
>
> The department issued notices to all interested parties to submit proposals for new facilities in the subarea. Four additional interested parties submitted applications. The department conducted a comparative review of the parties' applications and concluded that there was no need for any new facilities in the Pontiac subarea.
>
> The unsuccessful applicants filed exceptions with the board, claiming that the department committed legal error by denying their applications without assuring that its decision was "consistent with" the state medical facilities plan, as required by part 221 of the Public Health Code. The board rejected this argument, and affirmed the decision of the hearing officer with respect to six of the applicants. The board reversed, on the ground of need, with respect to Pontiac Osteopathic Hospital and granted it alone a certificate.
>
> Five of the original applicants appealed, this time in the Ingham Circuit Court. The court affirmed the denial of the certificate of need to the appellants, and reversed the grant of the certificate of need to Pontiac Osteopathic Hospital. [*Id.* at 518-519.]

The Supreme Court concluded that, under the circumstances, the department was not required to wait for a state medical facilities plan to be formally promulgated before reviewing the applications. Although § 22132, MCL 333.22132; MSA 14.15(22132), repealed by 1988 PA 332, contemplated that a state medical facilities plan would be promulgated before review of certificate of need (CON) applications are undertaken, the Court determined that the intent of the Legislature should not be frustrated because of the department's failure to promulgate such a plan. Because a state medical facilities plan had not been formally adopted, the department was obligated to conduct its review employing a methodology that assured that the goals of the statute would be met and its decision was fair and well-reasoned in accordance with the statutory criteria. *West Bloomfield Hosp*, 452 Mich 523. The Court cautioned that, at a minimum, the granting of a CON must be based on "a demonstrated current and future need for the facility." See *id.* at 525, quoting § 22132.

## I. JOINT ISSUES

Appellants West Bloomfield Hospital (WBH), Huron Valley Hospital (HVH), William Beaumont Hospital, and Sisters of Mercy Health Corporation submitted a joint brief.[1] We now address their remaining issues.

### A. EXTENT OF THE DEPARTMENT OF PUBLIC HEALTH'S AUTHORITY

Appellants argue that the trial court's opinion is based on an erroneous interpretation of the now-repealed part 221 of the Public Health Code, MCL

---

[1] Some of the issues raised in appellants' joint brief are also addressed in briefs submitted by the individual appellants.

333.22101 *et seq.*; MSA 14.15(22101) *et seq.*, which
governed the distribution of CONs at the time in ques-
tion.[2] Appellants assert that the trial court determined
that the statute vests the department with absolute
and uncontrolled power and discretion in the admin-
istration of the CON program. However, we read the
trial court's opinion as holding simply that the depart-
ment has the discretion to deny an application even
where all the other statutory criteria are satisfied if
there is no need for the proposed project. This inter-
pretation is consistent with the opinion of the
Supreme Court. See *West Bloomfield Hosp*, 452 Mich
525. Accordingly, we find no error.

### B. UTILIZATION OF ACUTE-CARE-BED-NEED METHODOLOGY TO DETERMINE FUTURE BED NEED

Appellants challenge the propriety of using the
acute-care-bed-need methodology (ACBNM) to deter-
mine future bed need. At the time in question, the
department had not promulgated the ACBNM as an
administrative rule. However, the Supreme Court has
stated that this procedural deficiency may be excused
"if the rule in question merely assists the agency in
the exercise of its discretion and there is no substan-
tial prejudice to the complaining party." *West Bloom-
field Hosp*, 452 Mich 524, citing *American Farm
Lines v Black Ball Freight Service*, 397 US 532, 539;
90 S Ct 1288; 25 L Ed 2d 547 (1970), and *EEOC v
Kimberley Clark Corp*, 511 F2d 1352, 1360-1361 (CA
6, 1975).

We do not construe this language to abrogate an
administrative agency's duty to promulgate rules and

---

[2] Part 221 of the Public Health Code was repealed and replaced with
Part 222, MCL 333.22201 *et seq.*; MSA 14.15(22201) *et seq.*, by 1988 PA 308.

procedures, particularly where, as here, the adoption of a plan has been mandated by statute. See MCL 333.22132; MSA 14.15(22132). Rather, we believe that the Supreme Court meant only that the failure to promulgate a plan in such a case would not necessarily be fatal where the Legislature has provided detailed criteria as a basis for the agency's consideration, where such criteria were actually taken into account by the agency, and where the applicants are not unfairly surprised by any other method used by the agency.

Under this standard, we find that appellants were not substantially prejudiced. Contrary to appellants' arguments, the department did not rely solely on the ACBNM. The record reveals that the department did in fact analyze all fourteen statutory criteria before reaching its decision.[3] In addition, the department

---

[3] MCL 333.22131(1); MSA 14.15(22131)(1) provided:

In making determinations and conducting reviews for certificates of need, the department and a health systems agency shall apply at least the following criteria:

(a) The relationship of the health care facilities or services being reviewed to the health systems plan and annual implementation plan, if any, for all health services areas to be served.

(b) The relationship of the health care facilities or services being reviewed to the long-range department plan, if any, of the person providing or proposing the facility or service.

(c) The need of the population served or to be served for the health care facilities or services being reviewed.

(d) The feasibility and availability of less costly alternatives or more effective methods of providing the health care facilities or services being reviewed.

(e) The relationship of the health care facilities or services being reviewed to the existing health care system of the health services area in which the facilities or services are provided or proposed, including the probable impact on the costs of providing health services in the areas served.

(f) In the case of health care facilities or services proposed under a certificate of need or other application, the availability or

potential availability of resources, including health personnel, management personnel, and funds for capital and operating needs for the provision of the facilities or services, and the potential for alternative uses of those resources for the provision of other health care services.

(g) The special needs and circumstances of institutional health care facilities and other entities which provide a substantial part of their services or resources to individuals not residing in the health service areas in which the facilities or other entities are located or in adjacent areas. The entities may include medical and other health professional schools, multidisciplinary clinics, and specialty centers.

(h) The special needs and circumstances of health maintenance organizations and other comprehensive health care programs. The needs and circumstances include the needs of, and costs to, members and projected members of the health maintenance organization in obtaining health services and the potential for a reduction in the use of inpatient care in a community through an extension of preventative health services and the provision of more systematic and comprehensive health services.

(i) In the case of a construction project proposal, the costs and methods of financing the proposed project; the probable impact of the project reviewed on the costs of providing health services by the applicant; and the specific requirements of law for building, zoning, fire, and safety standards and other permits and inspections applicable to the project.

(j) The degree to which the residents and physicians of the immediate community and region affected are provided access to the services and programs of the health facility applying for the certificate of need.

(k) The special needs and circumstances of biomedical and behavioral research projects which are designed to meet a state need and for which local conditions offer special advantages.

(l) That the health facility does not discriminate because of race, religion, color, national origin, age, or sex in its operations including employment, patient admission and care, room assignment, and professional or nonprofessional selection and training programs, and that the health facility governing body does not discriminate in its selection and appointment of individuals to the physician staff of the health facility or its training programs on the basis of licensure or registration or professional education as doctor of medicine, osteopathic medicine and surgery, or podiatry.

(m) That in the case of a nonprofit health facility, the facility is in fact governed by a body composed of a majority consumer membership broadly representative of the population served.

(n) When an application is made for a certificate of need to construct or expand an osteopathic or allopathic facility, the need for

considered the effect of the then-unbuilt Huron Valley Hospital, appellants' proposed market share and population figures, patients' travel time, and issues concerning the individual applicants. After examining all these factors, the department concluded that there was no need for the proposed projects and that, if any of the applications were granted, there would be an adverse effect on health-care costs in the region.

Furthermore, the use of the ACBNM was not patently unfair. As appellant WBH concedes in its brief on appeal, the administrative guidelines in effect at the relevant time referred to the ACBNM as a formula for projecting 1984 bed needs that creates a methodology against which CON review may be conducted. The ACBNM was also referenced in the second-cycle plan for the reduction of excess hospital capacity and the 1980-1984 state health plan; the hearing officer found that these documents were well known and readily available in the health-care field. Appellants were on notice that the ACBNM could be used to determine whether additional beds were needed. Appellants thus had the opportunity to review the ACBNM criteria and respond accordingly in their applications and subsequent responses.

---

that facility on the basis of the need and availability in the community for services and facilities for osteopathic and allopathic physicians, other licensed health care professionals, and their patients and the impact of the application for a certificate of need on existing and proposed institutional training programs for doctors of medicine and osteopathy and other licensed health care professionals at the student, internship, and residency training level. This subdivision shall not be construed to dictate a departure from good health planning principles or to mandate unnecessary duplication of services or facilities.

Appellants also contend that the ACBNM should not be used to determine future bed need because it measures only the market share of existing hospitals and does not accurately predict subsequent need. The department, however, concluded that the ACBNM was better at determining need than appellants' proposed methods.

The hearing officer noted that the department's statistician, Stanley Nash, was able to apply projected 1990 population estimates obtained from the state demographer to the ACBNM formula to determine future bed need. That the ACBNM had originally been used for designing bed reduction plans does not mean that it was not also a reasonably accurate methodology to determine future acute-care bed need; in fact, Nash testified that it was the best methodology available for the latter purpose. Consequently, we agree with the hearing officer and the trial court that appellants have failed to demonstrate that the department's use of the ACBNM to determine future need was improper. Moreover, we note, as did the hearing officer, that in enacting 1988 PA 332, § 22217(1),[4] the Legislature made the use of the ACBNM in CON reviews mandatory until other standards are approved, thus implicitly acknowledging that the ACBNM is an adequate tool for the purpose.

### C. DUAL ROLE OF ATTORNEY TAUBE

Appellants assert that Assistant Attorney General Robert J. Taube's dual role as the department's senior attorney and the CON board's legal advisor was prejudicial and unlawful. We disagree.

---

[4] MCL 333.22217(1); MSA 14.15(22217)(1).

In the proceedings below, the department was represented by Assistant Attorney General Marvin L. Bromley of the Public Health Division. At that time Taube, Bromley's supervisor, was the legal advisor to the CON board as the Attorney General's designee.

The trial court found that the dual representation, per se, constituted a violation of §§ 79 and 82 of the Administrative Procedures Act.[5] Section 79 provides, in pertinent part, that "[h]earings shall be conducted in an impartial manner." This includes the requirement that an unbiased hearing officer preside over the proceedings. *Blue Water Isles Co v Dep't of Natural Resources*, 171 Mich App 526, 532; 431 NW2d 53 (1988). Section 82 restricts ex parte communications in administrative proceedings. The trial court concluded that the error was harmless, however, because the department's disapproval of the appellants' applications was lawful and supported by substantial evidence.

We conclude that Assistant Attorney General Taube's advisory and supervisory roles, per se, did not constitute a violation of §§ 79 and 82. There is no evidence in the record indicating that Taube participated in ex parte communications with Bromley, nor is there evidence that Taube influenced the CON board on the department's behalf. In fact, the CON board deviated from the department's decision to deny all the CON applications. Under these circumstances, we find no error.[6]

---

[5] MCL 24.279; MSA 3.560(179), MCL 24.282; MSA 3.560(182).

[6] Because of our resolution of this issue, we do not address the department's contention on cross appeal that appellants waived their right to challenge the CON board's legal representation.

## II. HURON VALLEY HOSPITAL'S ISSUES

HVH raises three issues in its separate brief.

### A. REVIEW UNDER 1972 PA 256

HVH argues that it was entitled to have its application reviewed under the provisions of 1972 PA 256, which was in effect at the time that HVH filed its original CON application, and which was replaced by 1978 PA 368. HVH claims that, in agreeing to hold its CON application in abeyance pending the outcome of prior litigation,[7] the department also promised to review the application under the 1972 PA 256 criteria, which were apparently more favorable to HVH.

We conclude that such an arrangement would have violated legislative intent. Once the prior litigation had been concluded and HVH's expansion application was reactivated, Pontiac Osteopathic Hospital (POH) filed a CON application relating to the same subarea. The department determined that a comparative review was required, and it solicited additional applications. Because the other applications were filed after the effective date of 1978 PA 368, the department was required to review these applications under the criteria set forth in that statute. In order to conduct a true comparative review, it was essential for the department to review HVH's application under the same criteria as the other applications.

Moreover, the hearing officer concluded that there had been no meeting of the minds between HVH and the department regarding the applicable criteria. In order to form a valid contract, there must be a meet-

---

[7] See *Huron Valley Hosp, Inc v State Health Facilities Comm*, 110 Mich App 236; 312 NW2d 422 (1981).

ing of the minds with regard to all material facts. *Kamalnath v Mercy Memorial Hosp Corp*, 194 Mich App 543, 548; 487 NW2d 499 (1992). The unsigned stipulation to proceed under 1972 PA 256 presented by HVH is not objective evidence of a meeting of the minds. See *id.*

### B. GREAT WEIGHT OF THE EVIDENCE

HVH contends that the decision to deny its CON application was contrary to the great weight of the evidence and was thus both arbitrary and capricious. We disagree. First, HVH assumes that its application should have been reviewed under the 1972 PA 256 criteria; as discussed in the previous issue, the department properly reviewed its application pursuant to 1978 PA 368. The remainder of HVH's arguments merely constitute attempts to substitute its interpretation of the facts and law for the department's. We find no evidence that the department failed to take seriously its role under the statute, as HVH alleges; rather, we find the opposite to be true. Because HVH has not shown that the decision to deny its CON application was arbitrary, capricious, and contrary to the great weight of the evidence, there is no error requiring reversal.

### C. PROPRIETY OF COUNTING BEDS AWARDED TO PONTIAC GENERAL HOSPITAL

Finally, HVH argues that the department erred in counting against it the 350 beds that had been approved for Pontiac General Hospital (PGH) in 1978. HVH contends that this Court's opinion in *Huron Valley Hosp, Inc v State Health Facilities Comm*, 110 Mich App 236; 312 NW2d 422 (1981), implicitly com-

pelled the department to ignore the 350 beds previously granted to PGH in the present need analysis.

We disagree. In *Huron Valley Hosp*, PGH and HVH each applied for a CON to construct new facilities. The department determined that only one CON could be granted for the area and awarded the CON to PGH. HVH appealed from the denial of its application, and the circuit court ordered the department to issue a CON to HVH. This Court affirmed. See *id.* at 244, 252.

We are at a loss to understand how this Court's decision in the prior litigation has any bearing on whether the 350 beds awarded to PGH should be considered in the need evaluation in the instant case. Furthermore, we concur with the hearing officer's conclusion that a decision not to count those beds would ignore reality and would be a clear violation of the department's statutory duty to consider the needs of the population to be served. See MCL 333.22132; MSA 14.15(22132).

### III. WEST BLOOMFIELD HOSPITAL'S ISSUE

WBH argues that the department's reliance on the ACBNM rather than the formula provided by WBH, rendered its decision to deny WBH's CON application unlawful. Specifically, WBH asserts that the department should have used its formula for determining need instead of the ACBNM because the latter does not consider the entire population within a subarea and because WBH's formula more accurately forecasts market share.

Appellants' expert, James Lifton, testified at the hearing that market share can be predicted in three different ways, none of which is perfect. In fact, the application of those different methodologies by three

of the CON applicants resulted in widely varying con-
clusions with respect to the number of needed beds,
ranging from 195 to 349. Furthermore, each appli-
cant's market share theory assumed that its respec-
tive project was completed and then attempted to
prove that the facility would have a high occupancy
rate. Although WBH asserted that its new facility
would not draw patients from existing facilities, the
department personnel who reviewed the application
quite reasonably concluded otherwise.

Appellant WBH also argues that the ACBNM does not
adequately account for those patients who were then
migrating to hospitals outside the subarea. However,
Dr. Harvey Day, who oversaw the review process, tes-
tified that the new HVH facility would probably cap-
ture some of the migrating patients, and that there
was no evidence that the migrating population was
not going by choice to large Detroit and Ann Arbor
hospitals with good reputations.

#### IV. PONTIAC OSTEOPATHIC HOSPITAL'S ISSUES

POH raises three issues relating to the trial court's
reversal of the CON board's grant of a CON.

##### A. AUTHORITY OF CON BOARD TO REVERSE THE DENIAL OF CON

POH claims that the trial court erred as a matter of
law in construing the pertinent statutes as limiting the
CON board's authority to reverse a decision by the
department to deny a CON application. POH asserts
that, contrary to the trial court's ruling, the board has
plenary authority to review both the department's
denial and granting of CON applications.

Pursuant to § 22165, a party denied a CON by the
department had the following right of appeal:

If an applicant for a certificate of need is aggrieved by the decision of the department or if the recommendation of the health systems agency is not accepted, the applicant or the health systems agency may request a hearing to be conducted pursuant to the administrative procedures act of 1969 by the appeals authority created pursuant to Section 22121(2). The decision of the appeals authority to issue or deny a certificate of need shall be final and is binding on the department. [MCL 333.22165; MSA 14.15(22165), repealed by 1978 PA 368.]

The CON board's review powers were set forth in § 22121(3):

A health facility which is not granted a certificate of need upon application may appeal to the certificate of need board. The certificate of need board shall hold a hearing on the appeal within 30 days after the appeal is filed. The hearing shall be conducted pursuant to the administrative procedures act of 1969. If the certificate of need board finds any of the following, it may grant the certificate of need or modify the bed reduction order for that health facility:

(a) The bed reduction plan or the limitation on the number of beds for the health facility is arbitrary and capricious.

(b) The denial of the certificate of need application was arbitrary or not in accordance with law or the appropriate bed reduction plan.

(c) The denial will cause a significant reduction in services by physicians of a particular school of medicine. [MCL 333.22121(3); MSA 14.15(22121)(3), repealed by 1978 PA 368.]

The trial court concluded that the two sections are inconsistent and that the board has greater discretion in reviewing the approval of a CON application than in reviewing its disapproval. We disagree with the trial court's interpretation of these sections.

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). Statutory language should be construed reasonably, keeping in mind the purpose of the statute. *Barr v Mount Brighton Inc*, 215 Mich App 512, 516-517; 546 NW2d 273 (1996). An examination of the plain language of § 22165 does not lead to the conclusion that the Legislature intended to expand the board's review authority beyond that expressed in § 22121(3)(b). Thus, the board's review authority is equally circumscribed whether it is reviewing the approval or denial of a CON application.

Nonetheless, the trial court was correct in concluding that the board's review authority in this case was limited by § 22121(3)(b) because it was reviewing the *denial* of POH's CON application. The trial court properly considered whether the board erred in finding that the department's disapproval of the application was arbitrary and not in accordance with the law. Accordingly, appellant POH is not entitled to relief with regard to this issue.

### B. APPLICABLE STANDARD OF REVIEW

Appellant POH next asserts that the trial court improperly applied a different standard of review to its application than it did to the other applications when it stated that the board must give deference to the department's decision to deny its CON application. However, regardless of whether the trial court erred in determining that the board must accord deference to the department's denial of the application, it is clear that the trial court applied the appropriate stan-

dard of review. The trial court stated that the board must determine whether the department's decision was arbitrary or contrary to law. This is the standard provided in MCL 22121(3)(b); MSA 14.15(22121)(3)(b). Because the trial court did not misstate the applicable standard of review, we find no error requiring reversal.

### C. POH'S CON APPLICATION

Finally, appellant POH argues that the board's decision to grant it a CON was supported by substantial evidence on the record. The board ruled that the department's decision to deny POH a CON was arbitrary and not in accordance with the law on the basis of the following factors: (1) POH is the eighth largest osteopathic teaching hospital in the United States; (2) POH's existing facility is cramped for space, which adversely affects patient care and medical instruction and also constitutes license and code violations; (3) the structural foundation of the existing facility would not support additional floors; (4) the existing facility is landlocked and cannot be expanded laterally; (5) the proposed facility would not add beds to the subarea; and (6) the proposed facility would be cost efficient.

The trial court ruled that the board's decision was contrary to law and arbitrary. We disagree. The Supreme Court has explained that the granting of a CON must be based on "a demonstrated current and future need for the facility." See *West Bloomfield Hosp*, 452 Mich 525, quoting MCL 333.22132; MSA 14.15(22132). It is undisputed that POH's proposal would not add beds to the subarea and that POH's current facilities suffer from multiple deficiencies that

affect both patient care and its teaching functions. There is record support for the board's conclusion that the criteria of § 22131 are satisfied. Accordingly, we reverse and remand to the circuit court for issuance of a CON to POH.

V. CONCLUSION

We reverse and remand to the circuit court for issuance of a certificate of need to appellant POH. In all other respects the decision of the trial court is affirmed. We do not retain jurisdiction.

MICHAEL J. KELLY, J., concurred.

TAYLOR, J. *(concurring in part and dissenting in part)*. I concur with the majority that Pontiac Osteopathic Hospital is entitled to a remand for the trial court's issuance of a certificate of need. Because the other health-care facilities are entitled to similar relief, I dissent from the rest of the majority opinion.

This Court originally held that the failure of the Department of Public Health to adopt and follow a state medical facilities plan (SMFP), which had been expressly required by the Legislature, was error and that the department was therefore without power to process, much less deny, several hospitals' applications for certificates of need. *West Bloomfield Hosp v Certificate of Need Bd*, 208 Mich App 393; 397; 528 NW2d 744 (1995). The Michigan Supreme Court reversed our decision on the narrow basis that an agency's failure to adopt rules requisite to the processing of an application does not *automatically* make an agency's decision invalid or subject to reversal. *West Bloomfield Hosp v Certificate of Need Bd*, 452 Mich 515, 524; 550 NW2d 223 (1996).

The Supreme Court, pointing to the case of *American Farm Lines v Black Ball Freight Service*, 397 US 532; 90 S Ct 1288; 25 L Ed 2d 547 (1970),[1] held that the failure to have rules could be excusable if the missing rules were merely procedural and their absence would not create substantial prejudice to the complaining party. I believe *American Farm Lines* holds, at its broadest, that a federal administrative agency may "relax or modify its procedural rules" when the "ends of justice require it," *id.* at 533, but in no event can it be read to excuse the failure of the administrative agency to adopt rules if those rules are substantive, i.e., provide the decisional basis, for the agency's ruling. Indeed, I believe, *American Farm Lines* must be read in this fashion. To do otherwise, would grant administrative agencies the right to adjudicate parties' rights without due process for those parties. Certainly, our Supreme Court would not order such a thing because it would be contrary to the most fundamental understandings of the Michigan and federal constitutions. Needless to say, there is no case that gives such authority.

The question, then, before us is: Were the missing rules substantive or procedural in their import? I believe they can only be considered as substantive. The SMFP was to inform the public of the things

---

[1] At the outset, it seems unusual that we are referred to *American Farm Lines*. The last time the Michigan Supreme Court cited *American Farm Lines* was in *Michigan Farm Bureau v Bureau of Workmen's Compensation*, 408 Mich 141, 150-151, n 4; 289 NW2d 699 (1980). There, the Court noted the higher standards that are required of Michigan agencies, as contrasted with federal agencies, regarding an agency's need to promulgate, as rules, their regulations, statements, standards, policies, and so forth. In any case, misgivings noted, I will, as we have been directed to do, analyze under *American Farm Lines* as I believe our Supreme Court currently understands it.

needed to be considered in deciding whether a certificate of need was justified. An applicant could look at the SMFP and determine what facts had to be shown to get a certificate of need and plan the case accordingly. This is not, by any reasonable understanding of the concepts, a procedural matter. A fair review of the record shows that the decisional basis of the department was the acute-care-bed-need methodology (ACBNM),[2] which, as the department described it, stood in lieu of the SMFP. 452 Mich 522. If the ACBNM was substantive, how can the SMFP, for which it was a surrogate, not be?

Moreover, even if I were to assume that the department's failure to adopt a state medical facilities plan was merely a procedural problem and not substantive, we must still look to the second part of the *American Farm Lines* holding to determine if the parties suffered substantial prejudice from the department's failure. On this record, I find that they did. One of the criteria the applicants had to establish was future need. MCL 333.22131(1)(n); MSA 14.15(22131)(1)(n). However, department witnesses conceded that the ACBNM was not predictive.[3] Simply

---

[2] Phyllis Eaton, a staff analyst with the department's planning section, testified that the department would rely only upon the ACBNM and was precluded from relying upon any methodology other than the ACBNM.

[3] Dr. Harvey Day, the chief of the Bureau of Health Facilities for the department, testified that the ACBNM is not predictive of future market shares because it is only descriptive of retrospective market. The significance of this limitation is made clear by the following portion of the appellants' joint brief, which summarized a hypothetical situation that expert James Lifton presented:

Assume that there were four hospitals in a particular subarea that were full of patients. The ACBNM black box would measure, in the aggregate, the market share that had been captured by all four hospitals and would calculate that their market share or volume of

stated, this means it could not do the job it was supposed to do. Because it was not predictive of future hospital need, it was no more than a snapshot, at best, of the current market. No matter how good that snapshot may have been, it cannot serve as a prediction. Accordingly, to use it as the test was arbitrary and unreasonable. Under such circumstances, using the ACBNM snapshot methodology as a decisional standard caused the applicants substantial prejudice.

Because the department's failure to adopt an SMFP was not a procedural deficiency, and because it caused the applicants substantial prejudice, it is not necessary to reach the remaining issues in this case.

For the foregoing reasons, I would remand to the trial court for issuance of certificates of need to all the appellant health-care providers.

---

business justified all of the existing beds. Then if three of the hospitals burned down and were closed, the ACBNM would only analyze the discharge data from the one remaining hospital in the subarea since the ACBNM only measures the market (discharges) in the subarea from existing subarea hospitals. The ACBNM would show that there were sufficient discharges being handled by the one hospital to justify only its beds, since that is all the capacity that the one hospital could handle. The ACBNM would not show a need for the three hospitals that previously existed, or even one of the three that previously existed. . . . It only looks at the market share of existing hospitals. . . . It does not measure need for new beds, as required by Sections 22131(1)(c) and 33132 [sic]. It cannot predict whether a hospital will be full once it is built and it cannot predict the impact a full hospital will have on other hospitals.