KENT PROSECUTING ATTORNEY v KENT CIRCUIT JUDGES

Docket No. 57932. Submitted August 17, 1981, at Lansing.—Decided
    October 19, 1981.

The Kent Circuit and District Court Judges collectively issued an
    emergency administrative order authorizing the Kent County
    Sheriff to release certain inmates from the Kent County jail
    whenever it became overcrowded. Pursuant to the order, in-
    mates were subsequently released from the jail on three occa-
    sions. The Kent County Prosecutor filed a complaint for super-
    intending control in the Court of Appeals alleging that the
    order was invalid because it infringed upon the governor's
    power of commutation and because the judges lacked jurisdic-
    tion to enter such an order. The Court of Appeals initially
    ordered the defendants to show cause why superintending
    control should not issue, requested the parties to brief addi-
    tional issues, and stayed further release of prisoners. *Held:*

    A circuit court's jurisdiction must be invoked by the institu-
    tion of proceedings by parties. Here, the judges acted *sua
    sponte*. There were no complaints filed in the defendants'
    courts with regard to the jail conditions by or on behalf of any
    of the inmates of the facility. There was no controversy before
    the defendants necessitating judicial action. The defendants'
    emergency administrative order should be vacated.

    Order vacated.

1. COURTS — JURISDICTION.

    The term jurisdiction as applied to courts refers to the power of a
    court to act and the authority a court has to hear and deter-
    mine a case.

2. COURTS — CIRCUIT COURTS — JURISDICTION.

    The circuit courts in Michigan are courts of general jurisdiction
    possessing original jurisdiction in all matters not prohibited by

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Courts § 87.
[2] 20 Am Jur 2d, Courts §§ 98, 103.
[3] 20 Am Jur 2d, Courts § 94.

law; nonetheless, a circuit court's jurisdiction must be invoked by the institution of proceedings by parties.

3. ACTIONS — JURISDICTION — CONTROVERSY.

There must be a controversy necessitating judicial action before the circuit court may act; the necessity that there be an honest and actual antagonistic assertion of rights by one individual against another ensures that matters are presented to the judiciary in the best possible posture for adjudication and precludes the exercise of a judicial veto power over the actions of the other branches of government.

*David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Chief Appellate Attorney, for plaintiff.

*Varnum, Riddering, Wierengo & Christenson* (by *Dennis C. Kolenda),* for defendants.

Amicus Curiae:

Governor of Michigan, by *Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Keith D. Roberts,* Assistant Attorney General.

Before: J. H. GILLIS, P.J., and T. M. BURNS and N. J. KAUFMAN, JJ.

PER CURIAM. On May 14, 1981, the Kent County Circuit and District Court Judges[1] issued an "Emergency Administrative Order" authorizing the Kent County Sheriff to release inmates from the Kent County Correctional Facility whenever the jail became overcrowded. The order provided:

"IT IS ORDERED that the sheriff be, and he is hereby, granted authority to release inmates confined on crimi-

---

[1] Defendant judges include the judges of the 17th Circuit Court, the 59th District Court, the 62nd District Court and the 63rd District Court.

nal charges and friend of the court matters only when the jail is overcrowded on the following conditions:

"1. For non-violent crimes only;

"2. Persons who are not a threat to society;

"3. Providing the inmate has not had serious infractions of the rules or misconduct during confinement;

"4. Only within 30 days of the relase date of the individual;

"5. Provided the inmate has served at least 60% of sentence imposed;

"6. Each sentencing judge may reserve at time of sentence the right to exclude individual inmates from eligibility for such release.

"This administrative order shall remain in effect until cancelled, revoked, or rescinded by the undersigned judges, but not beyond November 1, 1981, unless specifically extended by the undersigned."

The order was accompanied by a letter from Chief Circuit Judge R. Stuart Hoffius, which stated:

"It is requested that this order be used only under the following conditions:

"1. A determination of the jail population shall be made and reviewed only once each week on a day selected by your office.

"2. Releases will be made only when the male population of the jail exceeds the count of 400, and/or the female population of the jail exceeds the count of 50.

"3. That your office will furnish a list of the persons released, indicating the sentencing court, to me as Chief Judge of Circuit Court immediately upon their release. I will furnish copies to the interested courts."

Pursuant to the order, inmates were released from the jail on May 15, May 22, and May 29, 1981. On May 27, 1981, the Kent County Prosecutor filed a complaint for superintending control in this Court, alleging that the order was invalid because it infringed upon the governor's power of

commutation and because the judges lacked jurisdiction. This Court ordered defendants to show cause why superintending control should not issue, requested the parties to brief additional issues and stayed further releases. We now grant plaintiff's request for superintending control and vacate the defendants' order.

The term jurisdiction refers to the power of a court to act and the authority a court has to hear and determine a case. *State Highway Comm v Gulf Oil Corp,* 377 Mich 309, 312-313; 140 NW2d 500 (1966). The circuit courts in Michigan are courts of general jurisdiction possessing original jurisdiction in all matters not prohibited by law. Const 1963, art 6, § 13; MCL 600.601, 600.605; MSA 27A.601, 27A.605. Nonetheless, a circuit court's jurisdiction must be invoked by the institution of proceedings by the parties.

"The circuit court is a court of record, acting through a judge or judges only in suits that are properly begun by the filing of appropriate pleadings. The court can only act judicially. Judicial power is the power of the court to decide and pronounce its judgment and to carry it into effect between persons and parties who bring a case before it for decision. *Muskrat v United States,* 219 US 346 [31 S Ct 250; 55 L Ed 246 (1910)]." *Goetz v Black,* 256 Mich 564, 569-570; 240 NW 94 (1932).

This requirement is akin to the case and controversy requirement of the United States Constitution. The necessity that there be an honest and actual antagonistic assertion of rights by one individual against another ensures that matters are presented to the judiciary in the best possible posture for adjudication and precludes the exercise of a judicial veto power over the actions of the

other branches of government. *Muskrat v United States, supra.*

In the instant case, the defendant judges acted collectively in a *sua sponte* manner; no complaints were filed in defendants' courts with regard to the jail conditions by or on behalf of any of the inmates of the facility. Consequently, there was no controversy before the defendants necessitating judicial action. These particular circumstances demonstrate the wisdom of the controversy requirement. Defendants determined, despite the absence of any adverse proceedings, that the jail was in such eminent danger of overcrowding to demand the periodic release of prisoners. This conclusion was apparently based on the fact that the inmate population at times exceeded the installation's design capacity of 399 males and 50 females. Nonetheless, there were no proceedings of record where it was demonstrated that jail conditions constituted cruel and unusual punishment in violation of the Eighth Amendment.[2] Were the order in question the product of actual adverse proceedings the conclusion that prisoner release would be necessary (if still reached) would no doubt rest on firmer ground.[3]

Despite our disposition of this case, we do sympathize with the defendant judges. Prison and jail overcrowding is a problem of major dimensions within Michigan and across the nation. Still, in

[2] The constitution is not violated merely because the stated design capacity of the jail is exceeded. *Rhodes v Chapman,* — US —; 101 S Ct 2392; 69 L Ed 2d 59 (1981) (double celling in a maximum security prison does not per se constitute cruel and unusual punishment).

[3] We also note that the emergency order could not have been issued pursuant to GCR 1963, 712.7. While the subrule permits the *sua sponte* issuance of a writ of habeas corpus it does not do away with the necessity for a hearing on such a writ prior to the actual release of a prisoner. GCR 1963, 712.18. Nor could the order have been issued pursuant to GCR 1963, 927 or DCR 927, which authorize only administrative orders governing internal court management.

these times of declining government revenues prison conditions do not rank high on the priority lists of legislative bodies and the taxpaying public. As conditions deteriorate to the point of constitutional significance the courts are turned to for solutions, which not infrequently come in the form of federal intervention. See, *e.g., Pugh v Locke,* 406 F Supp 318 (MD Ala, 1976), *modified* 559 F2d 283 (CA 5, 1977), *rev'd in part on other grounds* 438 US 781; 98 S Ct 3057; 57 L Ed 2d 1114 (1978).[4] Defendants' motive in issuing the order, to ease the perceived threat of jail overcrowding, was certainly a laudable one. Nonetheless, inasmuch as the order was entered absent jurisdiction on the part of defendants it should not stand.

For the above reasons, we vacate defendants' May 14, 1981, Emergency Administrative Order.

[4] Evidently, the Kent County Correctional Faciltiy is presently the subject of such federal litigation.