ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket No. 215919. Submitted June 6, 2000, at Lansing. Decided December 8, 2000, at 9:10 A.M.

The Detroit Edison Company initiated proceedings in the Public Service Commission for the suspension of its power supply cost recovery clause. The Attorney General intervened in the proceedings. Detroit Edison moved to terminate the proceedings. The PSC, over the objection of the Attorney General, issued an order granting Detroit Edison's motion. The Attorney General appealed as of right in the Court of Appeals. During oral argument, the Court of Appeals, on its own motion, raised the issue whether the Attorney General's participation in the case through various assistant attorneys general as both party litigant and counsel for the PSC gives rise to a conflict of interest. The Court of Appeals invited supplemental briefs on the conflict of interest issue. By agreement between the Attorney General and the PSC, the Attorney General appointed a special assistant attorney general to represent the PSC. However, the Attorney General represented that the appointment was for the limited purpose of filing a brief on the conflict question only. Furthermore, a stipulation for substitution of counsel for the PSC was not filed. After supplemental briefs were filed, the Attorney General moved for immediate consideration, for leave to file a brief in response to the PSC's supplemental brief, and for an expedited decision. The Court of Appeals issued an order granting the motion for immediate consideration and the motion for leave to file a responsive brief, but denying the motion for an expedited decision. (GRIFFIN, J., concurring in part and dissenting in part, would have granted the motion to expedite). The Attorney General sought leave to appeal to the Supreme Court. The Supreme Court, in lieu of granting leave, directed the Court of Appeals to issue a decision regarding whether the conflict of interest question raised during oral argument presents a live controversy in the case or is purely hypothetical. The Supreme Court also directed the Court of Appeals to determine whether the PSC has standing to participate in the appeal, in defense of its own ruling, if the Court of Appeals were to decide that the conflict of interest question presents a live controversy. 463 Mich 890 (2000).

The Court of Appeals *held*:

1. Michigan has a long tradition of judicial oversight of the ethical conduct of its court officers. Canon 3(B)(3) of the Michigan Code of Judicial Conduct provides that a judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware. It is pursuant to its responsibility to oversee the conduct of court officers that the Court of Appeals has raised and now addresses the issue whether the Attorney General's dual roles in this case as both the party appellant and as counsel for appellee PSC constitute an impermissible conflict of interest.

2. The Attorney General's appointment of a special assistant attorney general for the PSC has not rendered moot the conflict of interest issue. The Attorney General continues as both the appellant and as counsel for the PSC in view of the Attorney General's representation that the special assistant attorney general was appointed for the limited purpose of a filing a brief on the conflict of interest question, and in view of the absence of a stipulation or order for substitution of counsel for the PSC. Additionally, the purpose of the conflict of interest rules is to condemn the creation and existence of the dual relationship instead of merely scrutinizing the results that may flow therefrom.

3. The PSC has standing to participate in this appeal in defense of its ruling because it has a substantial interest that will be detrimentally affected in a manner different from the citizenry at large and its participation is necessary to ensure vigorous advocacy.

4. The Attorney General enjoys the unique status of being a constitutional executive officer of the state charged with the duty of providing legal services to the state of Michigan, its agencies, boards, commissions, officials, and employees, is statutorily empowered to intervene in any action in any court of the state whenever necessary to protect any right or interest of the state or of the people of the state, and is authorized to intervene and seek review of an administrative decision whenever necessary to protect the public interest. The Attorney General's unique status requires accommodation under, not exemption from, the Michigan Rules of Professional Conduct, among which is the conflict of interest rule, MRPC 1.7. Rule 1.7(a) states that a lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes the representation will not adversely affect the relationship with the other client and each client consents after consultation. No conflict of interest arises where the Attorney General represents opposing state agencies as long as the Attorney General is not an actual party in the dispute. However, a conflict of interest arises where, as here,

the Attorney General is both a party opposing a state agency and counsel for the state agency. The remedy for such a conflict is not necessarily automatic disqualification of the Attorney General as counsel for the state agency or, conversely, prevention of the Attorney General from pursuing an action as an active party. Rather, consistent with MRPC 1.7(a) dual representation is permissible if the Attorney General reasonably believes the representation will not adversely affect the relationship with the other client and each client consents to dual representation after consultation. In this case, the Attorney General must file either a stipulation for substitution of counsel for the PSC or a consent of client for continuation of counsel after consultation regarding the conflict.

METER, P.J., dissenting, stated that the conflict of interest question raised in this case is purely hypothetical and is more properly addressed in a case involving an actual controversy. There is no inherent conflict in the Attorney General's representing a state agency and appearing as a litigant on the opposing side, and the PSC neither demonstrated nor suggested an actual conflict such that a live controversy exists in this case.

ATTORNEY AND CLIENT — ATTORNEY GENERAL — CONFLICT OF INTEREST.

The Attorney General may not in the same proceeding be both a litigant adverse to a state agency and counsel for the state agency unless the Attorney General reasonably believes that such representation will not adversely affect the relationship with the state agency and the state agency consents after consultation (MCL 14.28, 14.101; MSA 3.181, 3.211; MRPC 1.7).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *J. Peter Lark* and *Donald E. Erickson*, Assistant Attorneys General, for the Attorney General.

*David A. Voges, Henry J. Boynton*, and *Patricia S. Barone*, Assistant Attorneys General, and *Allan Falk*, Special Assistant Attorney General, for the Public Service Commission.

*Foster, Swift, Collins & Smith, P.C.* (by *William K. Fahey* and *Stephen J. Rhodes*) and *Bruce R. Mathers* and *Jon P. Christinidis*, for Detroit Edison Company.

Before: METER, P.J., and GRIFFIN and TALBOT, JJ.

Griffin, J. Appellant Attorney General appeals as of right an order of the Public Service Commission (PSC) granting appellee Detroit Edison Company's motion to terminate the proceedings in Case Nos. 00-011449 and 00-011528 regarding Edison's request for a suspension of its power supply cost recovery (PSCR) clause.

At the time of oral arguments in this appeal, the Attorney General was both appellant and counsel for appellee PSC. Upon calling the case, the Court raised the issue of the apparent conflict of interest of the Attorney General regarding her dual roles. When the opposing assistant attorneys general were unable to cite any authority to support their adversarial relationship, this Court invited supplemental briefs on the issue. Following our inquiry, appellee PSC objected to a brief prepared by its assigned assistant attorney general that argued the Attorney General and her assistant attorneys general had no conflict of interest. Thereafter, appellee PSC requested that the Attorney General appoint a special assistant attorney general to represent its interests. By mutual agreement, the Attorney General eventually appointed attorney Allan Falk as special assistant attorney general for the PSC. However, a stipulation for substitution of counsel has not been filed. Further, the Attorney General represents that her appointment of Mr. Falk is a limited appointment for the purpose of filing a brief on the conflict question only.

The authority of the Attorney General to appoint special assistant attorneys general is well established. See, e.g., *Dearborn Fire Fighters v Dearborn*, 394 Mich 229, 309-310; 231 NW2d 226 (1975) (opinion by Williams, J.); *Sprik v Regents of Univ of Michigan*, 43

Mich App 178, 184; 204 NW2d 62 (1972); OAG, 1985, No 6295, p 72 (May 15, 1985). In addition, the Legislature through statutory enactment has recognized the position of "independent special assistant attorney general." See, e.g., MCL 333.16237(2); MSA 14.15(16237)(2).[1] Once appointed, an independent special assistant attorney general is not subject to the control and direction of the Attorney General. *Id.* Rather, and if needed, the independent special assistant attorney general is supervised by the court.

CONFLICT OF INTEREST ISSUE

A

INDEPENDENT JUDICIAL DUTY

The judiciary has the exclusive constitutional prerogative, Const 1963, art 3, § 2, to define and regulate the practice of law insofar as judicial proceedings are concerned, *Detroit Bar Ass'n v Union Guardian Trust Co*, 282 Mich 216, 225-228; 276 NW2d 365 (1937), and our Supreme Court has the power under Const 1963, art 6, § 5 to regulate and discipline the members of the bar of this state. *Grievance Administrator v Lopatin*, 462 Mich 235, 242, 247; 612 NW2d 120 (2000). Starting with *In re Mills*, 1 Mich 392 (1850), Michigan has a long tradition of judicial oversight of the ethical conduct of its court officers. See Pasman, *The conflict of "conflict of interest": The Michigan example*, 1995 Det Col L R 133. The more recent cases in which our courts have taken affirma-

---

[1] Tangentially, MCL 600.1481; MSA 27A.1481 also provides that in those courts that employ judicial assistants, such assistants may "represent the court, the judges, or court officers in court matters arising out of their official duties in situations when the prosecuting attorney or attorney general has conflicting interest or responsibilities, or is otherwise disqualified."

tive action to enforce our ethical standards and rules regarding counsel are *In re Schlossberg*, 388 Mich 389; 200 NW2d 219 (1972), *In re Norris Estate*, 151 Mich App 502; 391 NW2d 391 (1986), *GAC Commercial Corp v Mahoney Typographers, Inc*, 66 Mich App 186; 238 NW2d 575 (1975), and *Auseon v Reading Brass Co*, 22 Mich App 505; 177 NW2d 662 (1970).

Our ethic rules were originally based on statute and common law. However, in 1971, the Michigan Supreme Court adopted a version of the American Bar Association Code of Professional Conduct. Thereafter in 1988, the Code of Professional Conduct was superseded by the Supreme Court's adoption of a version of the ABA's Model Rules of Professional Conduct.

The Michigan Code of Judicial Conduct, adopted by the Supreme Court in 1974, provides that each judge shall have administrative responsibilities to ensure professional conduct by his court officers. Specifically, Canon 3(B)(3) provides: "A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware." Pursuant to our independent responsibility to supervise the ethical conduct of our court officers, this Court has raised and now addresses the issue whether the Attorney General's dual roles in this case as both the party appellant and as counsel for appellee PSC constitute an impermissible conflict of interest.

B

MOOTNESS

The Attorney General argues that we should not address the conflict of interest issue because it has

been rendered moot by her appointment of Special Assistant Attorney General Allan Falk. We disagree.

First, the Attorney General represents that attorney Falk's appointment in this case is not plenary, but limited: "Mr. Falk's authority to represent a state agency derives solely from the action of the Attorney General in appointing him a special assistant attorney general *for the limited purpose of filing a brief on the conflict question.*" (Emphasis added.) Further, a stipulation for substitution of counsel has not been filed with this Court and an order of substitution has not been entered. Accordingly, the Attorney General continues as both the appellant and as counsel for appellee PSC, MCR 2.117(C)(2), *In re Withdrawal of Attorney*, 234 Mich App 421; 594 NW2d 514 (1999), and therefore the conflict of interest issue is not moot. Thus, the conflict is not hypothetical, but real and ongoing.

Second, while the Attorney General would prefer to focus on the ultimate result of the case rather than on the tangible ethical conflict of interest, we agree with the State Bar of Michigan Ethics Committee that "[t]he purpose of [the conflict of interest rules] is to condemn the creation and existence of the dual relationship instead of merely scrutinizing the results that may flow therefrom." State Bar of Michigan, Ethics Opinion, R-160 (November 1954), quoting Ethics Opinion, R-132 (January 1950).

C

STANDING

Pursuant to a directive of our Supreme Court,[2] we must also address "the question whether the Public

---

[2] In an order entered on October 11, 2000, our Supreme Court directed as follows:

Service Commission has standing to participate in the appeal, in defense of its own ruling." In Michigan jurisprudence

> [s]tanding is a legal term used to denote the existence of a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy. However, evidence that a party will engage in full and vigorous advocacy, by itself, is insufficient to establish standing. Standing requires a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large. [*House Speaker v State Administrative Bd*, 441 Mich 547, 554; 495 NW2d 539 (1993).]

The issue of standing was not raised or briefed by the parties to this appeal; hence, it has not been properly preserved for appellate review. *Meagher v McNeely & Lincoln, Inc*, 212 Mich App 154, 156; 536 NW2d 851 (1995). In any event, we note that in the sole reference to this issue, the Attorney General concedes that the PSC has standing under the present circumstances:

> The Commission's brief states, at page 14, "the MPSC is by statute a party in interest . . ." and compares itself to the Michigan Employment Security Commission. In fact, nothing in MCL 462.26; MSA 22.4 as most recently amended makes the Commission a "real party in interest." The former version of that statute vested jurisdiction in the Ingham County Circuit Court and said that actions in the circuit

---

In lieu of granting leave to appeal, the Court of Appeals is directed to issue a prompt decision on whether the conflict of interest question raised at the oral argument presents a live controversy in this case or the dispute is purely hypothetical. If the Court determines that it is going to decide the matter, it is further directed to also address the question whether the Public Service Commission has standing to participate in the appeal, in defense of its own ruling. The Court is to issue a decision on these matters within 60 days of this order. . . [463 Mich 890 (2000).]

court were to be commenced against the Commission as a defendant, but the amended statute dropped any such language.[3] Compare MCL 462.26; MSA 22.4 with MCL 421.38; MSA 17.540. ("The [MESC] shall be considered to be a party to any judicial action. . . .")

---

[3]    *The Attorney General does not mean to imply that the* MPSC cannot appear in appeals from its orders, and the Public Service Division has regularly and consistently represented the MPSC in appeals. Furthermore, in many MPSC decisions there is no party other than the regulated business which has filed the appeal, so an appearance by the MPSC is a practical action. MCR 7.204(E) requires service of appeals from MPSC decisions upon the MPSC. MCR 7.204(C)(3) requires service upon all other parties in the proceeding below, so when there was no party other than the appellant in the case below, it is only logical to consider the administrative agency as an appellee. For example, MCR 7.105(C)(1)(b) permits but does not require an administrative agency to become a "respondent." [Emphasis added.]

---

We hold that the PSC has standing to defend its decisions because it has a substantial interest that will be detrimentally affected in a manner different from the citizenry at large and its participation is often necessary to ensure vigorous advocacy. *House Speaker v Governor*, 443 Mich 560, 572; 506 NW2d 190 (1993); *House Speaker v State Administrative Bd, supra* at 554. In addition, its defense in the present case was triggered by the action of appellant Attorney General in naming the PSC as a party appellee. Appellant's argument in her brief on remand that the PSC may not be a necessary party in interest in every proceeding is not determinative of the issue whether the PSC has "standing" to defend its decisions.

D

DUAL ROLES AND "CONFLICT WALL"

The Attorney General is one of only three constitutionally mandated single executives heading principal departments of state government. Const 1963, art 5, § 3, ¶ 1. An elective official, Const 1963, art 5, § 21, the Attorney General and her designated assistants provide legal services to the state of Michigan and its hundreds of agencies, boards, commissions, officials, and employees:

> The attorney general shall prosecute and defend all actions in the supreme court, in which the state shall be interested, or a party; he may, in his discretion, designate one of the assistant attorneys general to be known as the solicitor general, who, under his discretion, shall have charge of such causes in the supreme court and shall perform such other duties as may be assigned to him; and the attorney general shall also, when requested by the governor, or either branch of the legislature, and may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested. [MCL 14.28; MSA 3.181.]

MCL 14.101; MSA 3.211 further provides:

> The Attorney General of the State is hereby authorized and empowered to intervene in any action heretofore or hereafter commenced in any court of the State whenever such intervention is necessary in order to protect any right or interest of the State, or of the people of the State. Such right of intervention shall exist at any stage of the proceeding, and the Attorney General shall have the same right to prosecute an appeal, or to apply for a re-hearing or to take

any other action or step whatsoever that is had or possessed by any of the parties to such litigation.

Most recently, in the context of budget appropriations contained in the general government appropriations act, 1999 PA 124, § 301(1), the Legislature reiterated the unique mandate of the Attorney General:

> The attorney general shall perform all legal services, including representation before courts and administrative agencies rendering legal opinions and providing legal advice to a principal executive department or state agency. A principal executive department or state agency shall not employ or enter into a contract with any other person for services described in this section.

The Attorney General's duties and powers are not exhaustively defined by statute and constitution, but include those exercised at common law. *Mundy v McDonald*, 216 Mich 444, 450-451; 185 NW 877 (1921). See, generally, *Jennings v State Veterinary Bd*, 156 Mich 417; 120 NW 785 (1909); *Babcock v Hanselman*, 56 Mich 27, 28; 22 NW 99 (1885); *People v Navarre*, 22 Mich 1 (1870); *Sprik, supra*.

In the landmark decision *Attorney General v Liquor Control Comm*, 65 Mich App 88; 237 NW2d 196 (1975), this Court first recognized the authority of the Attorney General to intervene to represent the public interest in administrative proceedings against state agencies. In *Attorney General, id*. at 93, we held "that the Attorney General had both the right and the duty to intervene and seek review of a decision of the Michigan Liquor Control Commission when, in his discretion, he deemed it in the public interest to do so."

In the present appeal, the Attorney General cites *Attorney General v Liquor Control Comm* as authority for her dual roles. However, in that precedentially significant decision allowing the Attorney General to intervene as a party against a state agency, the Liquor Control Commission was not represented by the Attorney General in the Court of Appeals.

The Attorney General represents that until the present case, her dual roles in these cases had never been questioned, even though the practice has existed "for approximately three decades." Indeed, until the advent of this case, the judiciary has not focused on the ethical strictures that govern the conduct of the Attorney General and her assistants.[3] However, considering the fact that assistant attorneys general represented both sides in the PSC litigation during this time, it is not surprising the issue was not previously raised by counsel for the litigants.

The Attorney General argues there is no conflict of interest in her dual roles. In the alternative, she asserts that were there a conflict of interest, it has been remedied by the erection of a "conflict wall":

> In the discharge of her dual duties, the Attorney General takes strict precautions to assure that her Department's rep-

---

[3] Passing reference to the present issue was made in *Barkley v Detroit*, 204 Mich App 194, 209, n 7; 514 NW2d 242 (1994), in which dual representation by the city's law department was challenged and this Court noted: "We do not decide whether different departments of, for example, the Attorney General's office, may represent parties on both sides of a dispute. Although some references were made in this regard, that is not an issue before us."

Also, in *West Bloomfield Hosp v Certificate of Need Bd (On Remand)*, 223 Mich App 507, 518; 567 NW2d 1 (1997), rev'd on other grounds, 459 Mich 863 (1998), this Court implicitly assumed that conflict of interest principles do apply to an assistant attorney general acting in a dual capacity.

resentation of the MPSC is not compromised in any way. The MPSC is separately and independently represented by attorneys assigned to the Public Service Division, while the Attorney General in her role as intervenor/appellant is represented by attorneys assigned to the Special Litigation Division. The Public Service Division is physically situated in the MPSC's offices located on the second floor of one state office building and the Special Litigation Division is located wholly apart in a separate office building across the street. Each division is headed by an independent assistant in charge and each is served by a separate secretarial staff. The assistants in charge of each division have responsibility for all operations of their respective divisions, from supervising all personnel to devising legal strategies and approving legal filings. The two divisions function completely separately and independently from each other and indeed are even advised in appellate matters by different attorneys in the Solicitor General's office who themselves maintain a strict "conflict wall" to avoid any communication of privileged or confidential information between the opposing sides in cases like the present one. The Attorney General does not in any way decide or determine the content of the work product of the Public Service Division. Simply stated, there is no interference with the operations of the Public Service Division, only the expectation that representation of the MPSC's interests will meet the high standard of performance that applies to all assistants in the Department of Attorney General.

*        *        *

In the appellate courts the conflict wall extends through the Solicitor General who supervises the Public Service Division's briefs, and a separate individual, the Assistant Solicitor General, who supervises the Special Litigation Division's briefs.

Finally, she acknowledges and represents: "*While all Assistants and Special Assistants derive their authority from the Attorney General,* neither the Attorney General personally, nor any supervisor, nor

anyone else has access to the files and records of both parties." (Emphasis added.)

The special assistant attorney general claims that the Attorney General's "conflict wall" may have been breached in the present case. Appellee PSC alleges that the briefs on the conflict of interest issue originally prepared by the assistant attorneys general for the public service division and the special litigation division were nearly identical.

We find it unnecessary to resolve the factual dispute regarding whether there has been a breach of the "conflict wall." Whether the purported wall has been penetrated is simply not dispositive to our resolution of the issue.

E

RULES OF PROFESSIONAL CONDUCT

"An attorney owes undivided allegiance to a client and usually may not represent parties on both sides of a dispute." *Barkley v Detroit*, 204 Mich App 194, 203; 514 NW2d 242 (1994). See also *Friedman v Dozorc*, 412 Mich 1, 24, n 10; 312 NW2d 585 (1981) ("under no circumstances could a lawyer properly represent both the plaintiff and the defendant in contested litigation"). This maxim governing the practice of law stems from the Michigan Rules of Professional Conduct (MRPC), Rule 1.7, Conflict of Interest: General Rule, which states:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

As this Court recognized in *Barkley, supra* at 202-203:

> [T]he conflict of interest rules are " 'a frank recognition that, human nature being what it is, a dual relationship involving adverse or conflicting interests, constitutes enormous temptation to take advantage of one or both parties to such relationship' " and that " *'[t]he purpose of [the conflict of interest rules] is to condemn the creation and existence of the dual relationship instead of merely scrutinizing the results that may flow therefrom.'* " [State Bar of Michigan Ethics Committee] Formal Opinion 160 (November 1954), quoting [State Bar of Michigan Ethics Committee] Formal Opinion 132 (January 1950). [Emphasis added.]

The Attorney General contends that by virtue of her unique office, she is "authorized by law to appear on both sides of a case or take conflicting positions when a private lawyer would be prohibited from doing so," and that she "does not stand in the same shoes worn by any other counsel" with regard to issues of conflict of interest. The special assistant attorney general asserts otherwise, and, interestingly,

both parties rely on the MRPC in support of their positions.

The Attorney General cites a comment to MRPC 1.7, which states in pertinent part:

> Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consent upon consultation. *By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party.* The propriety of concurrent representation can depend on the nature of the litigation. [Emphasis added.]

Appellant also references the preamble to the American Bar Association's Model Rules of Professional Conduct that was not adopted in the text of the Michigan Rules of Professional Conduct but was incorporated within its comments:

> Under various legal provisions, including constitutional, statutory and common-law, the responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships. For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement or whether to appeal from an adverse judgment. Such authority in various respects is generally vested in the attorney general and the prosecuting attorney in state government, and their federal counterparts, and the same may be true of other government law officers. Also, lawyers under the supervision of these

officers may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. They also may have authority to represent the "public interest" in circumstances where a private lawyer would not be authorized to do so. These rules do not abrogate any such authority. [MRPC 1.0.]

Appellee PSC argues that the text, not comments, of the Michigan Rules of Professional Conduct are authoritative. In particular, MRPC 1.0(c) states:

The text of each rule is authoritative. The comment that accompanies each rule does not expand or limit the scope of the obligations, prohibitions, and counsel found in the text of the rule.

Further, appellee PSC argues that the comments merely recognize the possibility that some specific constitutional, statutory, or common-law authority may relieve a government lawyer from an obligation to comply with a particular rule of professional conduct. Appellee asserts that nothing in the comments creates an exception to the Attorney General's general obligation to comply with the MRPC, most notably, the rules proscribing conflicts of interest, i.e., MRPC 1.7, rules giving the client control over the positions to be advocated and the interests protected or represented, i.e., MRPC 1.2(a), and rules obligating lawyers to respect client confidentiality or attorney-client privilege, i.e., MRPC 1.6(a), (b), and (d). The special attorney general argues:

No [Michigan] statute exempts the Attorney General from compliance with the Michigan Rules of Professional Conduct—although if there were such a statute, it would be unconstitutional, as being in derogation of the exclusive power of the Supreme Court to regulate the legal profession

at least with respect to lawyers appearing before the one court of justice as litigants or representatives of litigants. Const 1963, art 3, § 2. It is the judiciary which has the *exclusive* constitutional prerogative, Const 1963, art 3, § 2, to define and regulate the practice of law insofar as judicial proceedings are concerned. [Emphasis in original.]

Finally, appellee PSC notes that none of the comments apply to the present situation in which the Attorney General is a party rather than merely being counsel for disputing state agencies.

In our analysis of this important question, we begin by acknowledging the unique status of the Attorney General as a constitutional officer of the state of Michigan and her concomitant statutory authority to represent the state as its chief legal counsel. However, in this capacity, the Attorney General is not immune from application of the rules of professional conduct. As one court has succinctly stated:

The Legislature has designated the Attorney General as the legal representative of state officers and agencies sued in their official capacities. In the absence of other statutory or constitutional provision to the contrary, he is their sole legal representative in the courts and they are his clients. When the Attorney General appears in litigation in this capacity, he does so as a lawyer and an officer of the court. . . . His primary responsibility is to provide proper representation and competent counsel to the officer or agency on whose behalf he appears. . . .

The Legislature has thus created a traditional attorney-client relationship between the Attorney General and the state officers he is required to represent. It is well settled that in the control of litigation, the Attorney General has the duty to conform his conduct to that prescribed by the rules of professional ethics. 7A C.J.S. Attorney General § 12 (1980). As a lawyer and an officer of the courts of this State, the Attorney General is subject to the rules of this

Court governing the practice of law and the conduct of law-
yers, which have the force and effect of law. . . .

Among the codified rules of this Court to which the
Attorney General must conform his conduct is the Code of
Professional Responsibility which is applicable to all law-
yers in this state. [*Manchin v Browning*, 170 W Va 779, 789-
790; 296 SE2d 909 (1982).]

See also *Chun v Bd of Trustees of Employees Retire-
ment System of State of Hawaii*, 87 Hawaii 152, 173-
174; 952 P2d 1215 (1998).

The principle that the Attorney General, or her
assistants, should be bound by the MRPC, particularly
when appearing before any part of this state's "one
court of justice," Const 1963, art 6, § 1, is elementary
and eminently reasonable. Each is an attorney, and all
persons licensed to practice law in Michigan, or spe-
cially admitted for that purpose, are subject to the
MRPC. MCR 9.101(5); MCR 9.103(A). No exceptions are
specifically provided for the Attorney General or her
assistants, or, in more general terms for government
attorneys, either in the definition of "attorney" found
in MCR 9.101(5), or in the declaration of MCR
9.103(A) that attorneys are "at all times" bound to
conduct themselves "in conformity with the standards
imposed on members of the bar as a condition of the
privilege to practice law," including but not limited to
"the rules of professional responsibility . . . adopted
by the Supreme Court." Significantly, where the Mich-
igan Supreme Court has identified, on public policy or
other grounds, compelling justification for extending
special consideration to government lawyers, it has
done so explicitly. See, e.g., MRPC 1.11, regulating
successive government and private employment, and

MRPC 3.8, addressing the special responsibilities of a public prosecutor.

Moreover, as noted by appellee PSC, the cited comments to the MRPC are not authoritative and therefore do not intrinsically relieve the Attorney General from her obligation to comply with the rules of professional conduct, particularly those governing conflicts of interest. Thus, when the Attorney General advises or represents another official, agency, or department, an attorney-client relationship is thereby formed, *McCartney v Attorney General*, 231 Mich App 722, 725; 587 NW2d 824 (1998), and the rules regarding professional conduct apply.[4]

We do conclude, however, that the cited preamble and comments to the MRPC appropriately suggest the need for studied application and adaptation of the rules of professional conduct to government attorneys such as the Attorney General and her staff, in recognition of the uniqueness of her office and her responsibility as the constitutional legal officer of the state to represent the various and sometimes conflicting interests of numerous government agencies. In other words, the Attorney General's unique status *requires accommodation, not exemption, under the rules of professional conduct.* In this regard, the observations of the Connecticut Supreme Court befit the present circumstances:

---

[4] Indeed, it would appear that the Attorney General does not dispute this basic premise, having previously opined, in one instance, that the Attorney General's office may not provide the defense for employees of the Department of Social Services charged with criminal negligence in light of the Attorney General's prosecutorial powers and responsibility for supervising the work of the prosecuting attorney pursuant to MCL 14.28; MSA 3.181. See OAG, 1979, No 5464, p 102, 104 (March 23, 1979).

The attorney general of the state is in a unique position.
He is indeed sui generis. As a member of the bar, he is, of
course, held to a high standard of professional ethical con-
duct. As a constitutional executive officer of the state . . .
he has also been entrusted with broad duties as its chief
civil law officer and . . . he must, to the best of his ability,
fulfill his "public duty, as Attorney-General, and his duty as
a lawyer to protect the interest of his client, the people of
the State." This special status of the attorney general where
the people of the state are his clients cannot be disregarded
in considering the application of the provisions of the code
of professional responsibility to the conduct of his office.

*    *    *

. . . [W]e do not imply that . . . the attorney general, as a
member of the bar of the state, is not in his practice of law
held to the high ethical standards delineated in the code of
professional responsibility. We do conclude, however, that
in examining his conduct as a member of the bar due con-
sideration must also be given to his responsibilities and
duties as the constitutional civil legal officer of the state
and the organization and operation of his office. [*Connecti-
cut Comm on Special Revenue v Connecticut Freedom of
Information Comm*, 174 Conn 308, 318-321; 387 A2d 533
(1978) (citation omitted).]

We find no peculiarities in Michigan jurisprudence
that would warrant rejection of the Connecticut
court's appraisal in this jurisdiction as well. Thus, the
precise and narrow question to be answered in the
present case is whether such accommodation should
be extended to allow the Attorney General to appear
in court on the one hand as a party litigant (and as
counsel to herself), and on the other hand purport to
function as legal representative of an independent
executive agency that is an adverse party litigant.

As support for their respective positions, both
appellant Attorney General and appellee PSC rely on

decisions from other jurisdictions addressing the ethical boundaries of an attorney general's dual representation of government clients. With the caveat that the underlying law in these jurisdictions often differs from ours, a review of these authorities is nonetheless helpful and reveals a surprising commonality of thought regarding the license of an attorney general to dually represent government clients.

Appellant Attorney General cites numerous cases from other jurisdictions that would appear to support a majority rule that, in most instances, an attorney general may represent adverse state agencies in intragovernmental disputes. The first case cited by the Attorney General is *State ex rel Allain v Mississippi Public Service Comm*, 418 So 2d 779, 783 (Miss, 1982), in which the Mississippi Supreme Court held that the attorney general has "the inherent right to intervene in all suits affecting the public interest when he has no personal interest therein." The *Allain* court explained:

> [The attorney general] will be confronted with many instances where he must, through his office, furnish legal counsel to two or more agencies with conflicting interest or views. It is also readily apparent that in performing their duties, the agencies will from time to time make decisions, enter orders, take action or adopt rules and regulations which are, in spite of good intentions, either illegal or contrary to the best interest of the general public.
>
> Under our scheme of laws, the attorney general has the duty as a constitutional officer possessed with common law as well as statutory powers and duties to represent or furnish legal counsel to many interests—the State, its agencies, the public interest and others designated by statute.
>
> Paramount to all of his duties, of course, is his duty to protect the interest of the general public.

The question presented under these circumstances is whether the attorney general must abrogate his responsibility to one or the other. We think not, because, without legal counsel from his office, the agencies would have no representation. The case law and statutes make it unquestionably clear that he is the state's chief legal officer and is charged with managing all litigation on behalf of the state. Moreover, no state agency may employ legal counsel without the prior approval of the attorney general and any such special counsel appointed performs their duties under the supervision and control of the attorney general and serves at his pleasure and may be dismissed by him.

The various state agencies, therefore, are dependent upon the attorney general for legal counsel either by or through his office. [*Id.* at 782.]

However, and most significant to the present case, the Mississippi court also stated:

The attorney general has a large staff which can be assigned in such manner as to afford independent legal counsel and representation to the various agencies. *The unique position of the attorney general requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the attorney general's personal opinion.* [*Id.* at 784 (emphasis added).]

In fact, nearly all the decisions from other jurisdictions cited by appellant in support of her position that the Attorney General may represent opposing state agencies also provide that the Attorney General may do so only "where he or she is not an actual party" in the dispute. For example, in *Environmental Protection Agency v Pollution Control Bd*, 69 Ill 2d 394, 401; 14 Ill Dec 245; 372 NE2d 50 (1977), the Illinois court held: "Indeed, *where he or she is not an actual party*, the Attorney General may represent opposing state

agencies in a dispute." (Emphasis added.) See also *Connecticut Comm on Special Revenue, supra* at 319. The Maine Supreme Court repeated this holding in *Superintendent of Ins v Attorney General,* 558 A2d 1197, 1202 (Me, 1989), when it addressed the question: "If an agency is represented in court by independent private counsel, is it ethically permissible for the Attorney General to seek judicial review of an administrative decision of that agency, even though the agency was counseled by members of his staff during the administrative proceeding?" The Maine court concluded:

> [W]hen the Attorney General disagrees with a state agency, he is not disqualified from participating in a suit affecting the public interest merely because members of his staff had previously provided representation to the agency at the administrative stage of the proceedings. Other less drastic means of insuring effective representation for state officers and agencies exist. The abandonment of the public interest, as was ordered in this case, is not necessary. We endorse the practical resolution enunciated by the Supreme Court of Mississippi. . . .
>
> ". . . The unique position of the attorney general requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the attorney general's personal opinion. . . ."
>
> *Allain,* 418 So 2d at 784. *Because the Superintendent is now represented by private counsel, there is no ethical impediment to the legal action brought by the Attorney General.* [*Superintendent of Ins, supra* at 1204 (emphasis added).]

Thus, in the present case, because the Attorney General is a named party, the authorities on which

she relies do not support her position.[5] On the contrary, this line of authority holds that when the Attorney General is an actual party to the litigation, independent counsel should be appointed for the state agency in order to remedy the ethical impediment to the legal action brought by the Attorney General.

The rationale of the cases presented by the special assistant attorney general in this case in support of his position are by no means inconsistent or irreconcilable with the above case law. In *City of York v Pennsylvania Public Utility Comm*, 449 Pa 136, 150; 295 A2d 825 (1972), the court recognized the attorney general's broad powers of intervention pursuant to statutory and common law, and recognized "[t]here are occasions where an attorney general is required to represent both sides of a case," but nonetheless

---

[5] Other cases cited by the Attorney General in support of her position are inapposite to the present circumstances. *Weaver v Blue Cross & Blue Shield of Alabama*, 570 So 2d 675 (Ala, 1990), and *Feeney v Commonwealth*, 373 Mass 359; 366 NE2d 1262 (1977), both involve the attorney general's ability to prosecute actions over the objections of the state officers the attorney general represents. *State v Klattenhoff*, 71 Hawaii 598; 801 P2d 548 (1990), held that it was proper for the attorney general to prosecute the defendant (a state employee) in criminal matters while representing him in unrelated civil actions.

Although not relied on by appellant, we note that in *Public Utility Comm of Texas v Cofer*, 754 SW2d 121 (Tex, 1988), the court held that two Texas acts mandated that the attorney general represent two state agencies in all appeals, even when the agencies occupied opposite sides of the docket. However, the court added:

Because we base our decision solely upon the language of [the two Texas acts], we do not address the Attorney General's contentions that his "dual representations" of opposing state agencies does not create a conflict of interest. While our decision is consistent in result with the decisions of other state courts that have permitted "dual representation," we express neither approval nor disapproval of these authorities. [*Id.* at 125-126.]

concluded in light of the attorney general's statutory duty to represent the public utility commission:

> [T]o allow the Attorney General to intervene as an appellant in an appeal from an order of the Public Utility Commission would create an irreconcilable conflict of interest and thus cannot be permitted. We take the liberty of quoting extensively from the opinion of the Commonwealth Court on this point:
>
> \*     \*     \*
>
> "If intervention would be permitted, counsel for the Commission would be placed in a position of having a statutory duty of defending an order of the Commission while at the same time being controlled and directed by the Attorney General who is advocating a position directly opposite to the order of the Commission.
>
> "Since the Attorney General has the power to appoint counsel for the Commission, he likewise has the power to remove such counsel. If the Attorney General were permitted to intervene in opposition to the Commission's order, and as an opposing advocate to the counsel for the Commission, who is subject to removal by the Attorney General, then the Commission would be denied the effective representation of counsel to which it is entitled by statute. We cannot sanction such an irreconcilable conflict of interest."
> [*Id.* at 148-152 quoting *City of York v Pennsylvania Public Utility Comm*, 3 Pa Commw 270, 285-286; 281 A2d 261 (1971).]

See also *Arizona State Land Dep't v McFate*, 87 Ariz 139, 146-148; 348 P2d 912 (1960).

The Illinois courts have been perhaps the most prolific in addressing the ethical constraints of dual representation by an attorney general. In *People ex rel Scott v Briceland*, 65 Ill 2d 485, 502; 3 Ill Dec 739; 359 NE2d 149 (1976), the Illinois Supreme Court held that where the attorney general filed suit against the Envi-

ronmental Protection Agency and its director and deputy director for actions that they took pursuant to an apparently valid statute, the agency and its directors were entitled to independent representation. Subsequent cases include *Environmental Protection Agency, supra,* and *People ex rel Sklodowski v State,* 162 Ill 2d 117, 127; 205 Ill Dec 63; 642 NE2d 1180 (1994). In *Sklodowski,* the plaintiffs, beneficiaries and participants in five retirement systems funded by the state of Illinois under the Illinois pension code, filed suit against the governor, other elected officials of the state, and certain nominal defendants who were the trustees of the five retirement systems. The attorney general filed an appearance on behalf of three of the retirement systems and all the other defendants. The plaintiffs alleged a conflict of interest between the attorney general's representation of the retirement systems and the individual defendants. Reiterating its previous ruling in *Environmental Protection Agency, supra* at 401, that "as long as the Attorney General is not an actual party, or interested as a private individual, he or she may represent opposing state agencies in a legal dispute," the court stated:

> We believe that the Attorney General in this case properly represents the interests of the State defendants acting in their official capacities. In the role of counsel to the State, the Attorney General may represent the three retirement systems as entities of the State, which receive State moneys for the payment of pension benefits to State employees. *However, that is not to say that the Attorney General is representing the interests of the participants in and beneficiaries of the five retirement systems; clearly, plaintiffs and their counsel are representing the interests of the persons for whom the funds were established.* While there is an apparent conflict between the interests of the State

defendants (to divert the pension funds to other uses) and the responsibilities of the retirement systems (to regain financial stability in order to meet current and future pension obligations), we do not believe that the Attorney General's legal representation of three of the retirement systems will result in prejudice to any of the parties to this litigation. Plaintiffs are seeking relief on behalf of themselves and the class of people who are participants in or beneficiaries of the five retirement systems. *To the extent plaintiffs' interests are coextensive with that of the nominal defendants, the retirement systems, plaintiffs are capable of continuing their advocacy unaffected by the Attorney General's representation.* If plaintiffs prevail in their lawsuit the recovery would run to the retirement systems. [*Id.* at 127-128 (emphasis added).]

Of particular import to the present case is the *Sklodowski* court's observation, *id.* at 127, that

*[i]n the instant case, two of the retirement systems are being represented by independent private counsel appointed as special assistant Attorneys General. We approve of this procedure, which clearly removes the taint of perceived conflict.* [Emphasis added.]

Most recently, in *Suburban Cook Co Regional Office of Ed v Cook Co Bd*, 282 Ill App 3d 560; 217 Ill Dec 671; 667 NE2d 1064, 1071 (1996), the appellate court of Illinois had occasion to review the above authorities, albeit not in the same factual context as the present case, but in the context of the "question of the right to representation of an elected official when his opinion of the law applicable to his office is in conflict with the opinion of the lawyer whose statutory duty is to represent that elected official." The court's conclusions are nonetheless enlightening:

On the question of conflicts, we revert back to *Environmental Protection Agency*, [*supra*] in which the supreme

court said that the Attorney General's responsibility "will occasionally, if not frequently, include instances where State agencies are the opposing parties." *Environmental Protection Agency*, 69 Ill 2d at 401; 14 Ill Dec 245; 372 NE2d 50. The court also said the following:

*"Indeed, where he or she is not an actual party, the Attorney General may represent opposing State agencies in a dispute. . . ."*

A closer examination of *Environmental Protection Agency* discloses that it is not a substantial support for any claim that an Attorney General or State's Attorney may always represent two opposing officials for whom the Attorney General or State's Attorney is required to provide representation. First, the supreme court identified the issue as "whether a State agency may employ private counsel to represent it and have his or her fees paid by the Attorney General *in the absence of appointment of such counsel by the court or the Attorney General.*" (Emphasis added.) *Environmental Protection Agency*, 69 Ill 2d at 398. Second, the supreme court pointed out that the Agency was only a nominal party to the litigation and not the real party in interest. . . . Third, the supreme court said, "it is clear that the appellate court had the discretion to appoint or deny appointment of outside counsel." *Environmental Protection Agency*, 69 Ill 2d at 400. That is precisely the position of the plaintiffs in this case: the trial judge had the discretion to appoint or deny appointment of outside counsel. Last, with all due respect, we do not believe that the cases cited by the supreme court for its holding that the Attorney General may represent opposing state agencies in a dispute support that language. . . .

*. . . The point to be made is that the supreme court has recognized that the rule against conflicts of interest applies to lawyers acting in their official capacity and, in* Sklodowski, *expressed the view that where a conflict of interest arises in a dispute between two public agencies, a special attorney should be appointed to represent one of them.*

*We judge that a proper procedure in cases where an unreconcilable conflict arises between two officials the*

*State's Attorney is obliged to represent would require the invocation of the court's discretion by either the State's Attorney or the officials. (In fact, it has been recognized that a court may appoint a special State's Attorney upon its own motion.* In re Petition of McNulty, *60 Ill App 3d 701; 377 NE2d 191 (1978).) That procedure would insure that the official could not arbitrarily seek representation from a private attorney, nor seek private representation to advance a frivolous legal position. If the official is able to establish a colorable claim which the State's Attorney is unwilling to support or if the State's Attorney is representing two agencies which are in conflict, the court should be able to exercise its discretion and to appoint private counsel.* [Suburban Cook Co, *supra* at 573-575 (emphasis added).]

See also *Tully v Edgar*, 286 Ill App 3d 838, 843-847; 222 Ill Dec 157; 676 NE2d 1361 (1997); *Potter & Londrigan v State*, 36 Ill Ct Cl 26 (1983).

The common, consistent rationale that can be gleaned from these cases is that the rules of professional conduct do apply to the office of attorney general; while mechanical application of these rules is not possible because of the unique nature of that office, thus allowing dual representation in certain circumstances not otherwise permitted in the arena of private practice, the rules do recognize a clear conflict of interest when the Attorney General acts as a party litigant in opposition to an agency or department that she also represents in the same cause of action. We agree with the view of the majority of other jurisdictions on this issue. We hold that a conflict of interest arises when the Attorney General intervenes as a party in opposition to a state agency that she represents as counsel.

We find no idiosyncrasies in Michigan law that would warrant rejection of this reasoning; on the con-

trary, MRPC 1.7 fully supports this conclusion. The Attorney General's argument that she is exempt from application of the conflict of interest rules in the present situation by virtue of her statutory powers is without merit. Although 1999 PA 124, § 301(1) provides that the Attorney General "shall perform all legal services" for a principal executive department or state agency, and that such department or agency "shall not employ or enter into a contract with any other person for services described in this section," this statute merely reinforces the common-law principle that only public officers may represent the public interest, and private attorneys cannot commence litigation on behalf of the state. See *Navarre, supra*. We do not interpret this statute as sanctioning a practice whereby the Attorney General, as an actual party to litigation, may simultaneously attack and defend a state agency. Indeed, to construe this statute in such a manner would dubiously encroach on the exclusive and paramount power of the Supreme Court to regulate and discipline members of the bar while engaged in judicial proceedings. Const 1963, art 3, § 2; *Lopatin, supra*.

In this regard, and in light of the Attorney General's claims to this Court that the preclusion of dual representation in the present circumstances would "eviscerate the Attorney General's powers," it is important to emphasize not only the narrow confines of our decision, but also the fact that our enforcement of ethical standards neither diminishes the powers of her office nor interferes with her discretion. The present facts do not involve or interfere with the Attorney General's statutory prerogative to intervene as counsel for disputing state agencies, her power to defend

the constitutionality of legislative enactments, her right to act in an advisory role to state agencies and departments, or even her ability to initiate statutory review proceedings or "prosecute an appeal," MCL 14.101; MSA 3.211, in opposition to a commission decision. We hold only that pursuant to the rules of professional conduct, if the Attorney General chooses to stand in opposition to a state agency or department *as an actual party litigant* and yet simultaneously attempts to represent that state agency in the litigation, such dual representation creates a conflict of interest that must be addressed and rectified.[6]

The effect of our ruling is also tempered by its remedy,[7] since we conclude that the consequence of such

---

[6] Moreover, contrary to the Attorney General's assertion that her duty to serve the public interest requires dual representation under the present circumstances, we conclude that the obvious conflict of interest in fact interferes with her ability to fulfill such obligations. State departments, officers, and agencies deserve adequate legal representation, meaning representation free of conflict. The effect of our decision in this case may be that in some circumstances the Attorney General will be prevented from advocating one side of a judicial controversy involving state interests; however, disallowing dual representation frees her to vigorously pursue her chosen side of the litigation and thereby better serve the public interest, while at the same time ensuring independent representation for the state agency or department.

[7] We have fashioned this remedy, taking into account the parties' competing arguments regarding who should have the power to appoint the independent special assistant attorney general. In this case, the PSC claims independent authority to retain outside counsel of its choice, while the Attorney General counters that this would result in wedding the PSC to "someone with a 'hired gun' mentality and with no accountability" to the public interest. On the other hand, we are cognizant of the notion that a party (the Attorney General) "should not be allowed to choose their own opposing counsel." *Bd of Trustees of the Policemen & Firemen Retirement System v Detroit*, 143 Mich App 651, 655; 373 NW2d 173 (1985). However, in these particular circumstances, giving due deference to the well-established authority of the Attorney General to appoint special assistant attorneys general, see discussion, *supra*, pp 490–491, we conclude that the Attorney General is the appropriate party to select independent counsel if the circumstances warrant it. Nonetheless, because the neces-

a conflict is not necessarily automatic disqualification of the Attorney General as counsel for the state agency or, conversely, a bar to the ability of the Attorney General to pursue an action as an active party. Rather, consistent with MRPC 1.7, dual representation is permissible if "the lawyer reasonably believes the representation will not adversely affect the relationship with the other client" and "each client consents [to dual representation] after consultation." MRPC 1.7(a).

In order to remedy the conflict of interest, the Court directs, pursuant to MCR 7.216(A)(9), that appellant Attorney General file within twenty-one days either a stipulation for substitution of counsel for appellee PSC or a consent of client for continuation of counsel after consultation regarding the conflict. MRPC 1.7(a)(2). In the event that a stipulation for substitution of counsel is filed, counsel for appellee PSC shall file its brief on appeal within twenty-one days.[8] MCR 7.212(A)(2). All motions regarding the merits of appellant's issues on appeal, such as a motion for sanctions, MCR 7.216(C)(1)(a), shall be filed no later than appellee's brief.

---

sity for such an appointment occurs in the context of a conflict of interest, in the event of disagreement over the choice of counsel, the court may, upon the motion of either party, in its discretion appoint the independent special assistant attorney general. Cf. MCL 49.160; MSA 5.758 (providing for court appointment of a special prosecuting attorney in the event a prosecuting attorney is disqualified by reason of conflict of interest).

[8] While the PSC represents that "it has *generally* received legal representation [from its assigned assistant attorneys general] reflecting commendable levels of zeal and legal erudition," it is not clear, as evidenced by its equivocal statement "whether or not the MPSC chooses to adopt the brief on the substantive issues prepared on its behalf," that it accepts all the positions on the merits of appellant's appeal advanced by its assigned assistant attorney general. (Emphasis added.)

If no action is taken within twenty-one days, the Court will dismiss this appeal. MCR 7.216(A)(10). We retain jurisdiction.

TALBOT, J., concurred.

METER, P.J. (*dissenting*). I respectfully dissent because I do not believe that this case presents the appropriate circumstances in which to address the Attorney General's ability to sue a party whom she also represents.

The majority's opinion fails to adequately address a key issue directed to us by the October 11, 2000, order of the Supreme Court: "whether the conflict of interest question raised at the oral argument presents a live controversy in this case or the dispute is purely hypothetical."[1] I conclude that the conflict of interest question raised at oral argument is indeed purely hypothetical in this case and that its merits should therefore be addressed in the context of a future, more appropriate case.

There is no conflict of interest per se in the Attorney General representing a state agency and appearing as a litigant on the opposing side. See, e.g., *Attorney General v Public Service Comm*, 412 Mich 385; 316 NW2d 187 (1982) (in which the Attorney General sued a party whom he also represented), and *State ex rel Allain v Mississippi Public Service Comm*, 418

---

[1] While the majority opinion addresses the question of mootness, it fails to address whether a live controversy existed in this case. Contrary to the majority's implication, whether a particular case is moot and whether it involves a live controversy are two separate questions. Indeed, there can be cases involving live controversies that are subsequently rendered moot because the requested relief has already been granted. Conversely, if no live controversy exists in the first place, like in the instant case, then one does not even reach the question of whether the issue has become moot.

So 2d 779 (Miss, 1982) (in which the attorney general appeared as an intervening party opposite an agency that he also represented). In *Allain*, the court discussed the possibility of a conflict of interest and stated that no inherent conflict existed:

> The prevailing rule is that where the attorney general has common law powers, he has the inherent right to intervene in all suits affecting the public interest when he had no personal interest therein.
>
>              *      *      *
>
> Considering our scheme of laws with respect to the attorney general being the chief legal officer of the State with the duty to represent the many agencies of the State and his duty to protect the public interest, we are of the opinion and hold that the majority rule will afford maximum protection to the public interest as well as afford complete legal representation to the various state agencies.
>
> The attorney general has a large staff which can be assigned in such a manner as to afford independent legal counsel and representation to the various agencies. The unique position of the attorney general requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the attorney general's personal opinion. If the public interest is involved, he may intervene to protect it. [*Id.* at 783-784.]

See also *Weaver v Blue Cross & Blue Shield of Alabama*, 570 So 2d 675, 681-682 (Ala, 1990) (indicating that the attorney general could appear as counsel for opposing sides of a dispute).

These cases indicate that no conflict of interest per se existed in this case. Indeed, the office of the Attorney General has historically assigned its large staff to separate divisions for representation of state agencies

in such a manner as to essentially afford those agencies independent legal counsel. Moreover, although an *actual* conflict of interest (as opposed to a conflict per se) could potentially arise in a given case, the Public Service Commission (PSC) in this case neither demonstrated nor suggested such an actual conflict. The PSC did not even question the Attorney General's representation of it until after this Court raised the conflict of interest issue during oral argument. Subsequently, the PSC failed to allege or show how the Attorney General's dual representation on the underlying issue compromised the PSC. Accordingly, the conflict of interest issue in this case is purely hypothetical and should not be addressed by this Court. See, e.g., *Kent Prosecuting Attorney v Kent Circuit Judges*, 110 Mich App 404; 313 NW2d 135 (1981).

Even if this case were analogized to a declaratory judgment action in which the PSC asked for a ruling regarding the Attorney General's ability to sue a party whom she also represents, there would still exist no live controversy. Indeed, for such an action to be justiciable, the PSC would have to provide particularized facts showing how the Attorney General's dual representation on the underlying issue compromised the PSC or how adverse interests between the Attorney General and the PSC necessitated a sharper rule regarding the Attorney General's ability to represent two sides of a dispute. The PSC did not provide such facts. Accordingly, there exists no live controversy regarding the Attorney General's actions in this case. See *Shavers v Kelley*, 402 Mich 554, 589; 267 NW2d 72 (1978) (indicating, in the context of a declaratory judgment action, that a party seeking declaratory relief must "plead[] facts entitling him to the judg-

ment he seeks and prove[] each fact alleged, *i.e.*, a plaintiff must allege and prove an actual *justiciable* controversy") (emphasis in original). See also *Michigan State AFL-CIO v Civil Service Comm*, 191 Mich App 535, 545; 478 NW2d 722 (1991).

This Court simply does not address hypothetical issues in which no live controversy exists. See *Shavers, supra* at 589, and *Blue Cross & Blue Shield of Michigan v Governor*, 422 Mich 1, 72; 367 NW2d 1 (1985). Moreover, the Court of Appeals cannot exercise original jurisdiction to grant a declaratory judgment. See *Musselman v Governor*, 200 Mich App 656, 667-668; 505 NW2d 288 (1993). Accordingly, I would not use this instant case to address the issue of the Attorney General's dual representation but would wait instead to address it in the context of an actual controversy.[2]

---

[2] The PSC contends that an actual controversy does exist here because the Attorney General initially refused, against the PSC's wishes, to allow the PSC to retain independent counsel to brief the conflict of interest issue raised during oral argument (the Attorney General subsequently reconsidered and authorized the PSC to retain outside counsel). However, the fact remains that no actual controversy was proved *with regard to the Attorney General's representation in the underlying case.* Accordingly, because no actual controversy existed regarding the Attorney General's potential conflict of interest in the underlying case, I do not believe that the conflict of interest issue is properly before this Court or that it should be addressed by this Court.