*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HIAM IBRAHIM BAZZI,

        Plaintiff/Counterdefendant-
        Appellee,

v

MOHAMAD KHODOR-ADNAN KATBEY,

        Defendant/Counterplaintiff-
        Appellant,

and

MBN INTERNATIONAL, LLC,

        Defendant.

UNPUBLISHED
September 19, 2019

No. 345095
Wayne Circuit Court
LC No. 16-006845-CZ

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

In this appeal from the trial court's order awarding plaintiff damages in the amount of $218,635.92 for breach of contract, defendant[1] argues that the trial court erred in granting plaintiff summary disposition, failing to adjudicate defendant's counterclaims, and calculating the amount of damages awarded to plaintiff. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

---

[1] MBN International, LLC was dismissed from the lower court action and is not a party to this appeal. Our use of the term "defendant" in this opinion refers to defendant Mohamad Khodor-Adnan Katbey.

## I. BACKGROUND

This matter arises from a property settlement included in the parties' consent judgment of divorce, entered October 24, 2013. During their marriage, defendant owned several business entities, including Plaza 2000, LLC, and Roses Plaza, LLC. Plaza 2000 owned a building on Wyoming Street (the Wyoming property) in Dearborn, Michigan, with a retail tenant. Relevant to this appeal, the consent judgment of divorce included the following provisions:

> 22. *Plaintiff's share of assets*. Plaintiff is awarded the following assets free and clear from any claim by the Defendant:
>
>         \*   \*   \*
>
> e. Defendant agrees to transfer his ownership interest in Plaza 2000 to Plaintiff. He shall cooperate with executing all necessary documents to transfer his interest immediately.
>
>         \*   \*   \*
>
> 32. *Encumbrances on property*. Any lien, encumbrance, or obligation on any property awarded must be assumed and paid by the party receiving it unless otherwise specified in this judgment.
>
> 33. *Warranties regarding encumbrances on property*. The property award in this judgment is based on each party's warranty that any property being transferred to the other party is free of any liens, encumbrances, or debts other than those specifically disclosed.

Despite the award of Plaza 2000 to plaintiff in Paragraph 22(e), it was never transferred to her. When the consent judgment of divorce was entered, an outstanding mortgage with a balance of approximately $175,000 remained on the Wyoming property. Plaintiff was aware of this debt, as it had been included in the financial statement defendant prepared during the divorce proceedings. Defendant later claimed that there were additional mortgages on the Wyoming property that were known to plaintiff. When the first mortgage went unpaid, the property was foreclosed upon and sold at a sheriff's sale on November 14, 2013, just weeks after the consent judgment was entered.

Thereafter, defendant arranged for the sale of the Wyoming property from Plaza 2000 to MBN International, LLC (MBN), with the intention of using the proceeds of the sale to redeem the property. On March 21, 2014, defendant redeemed the property for $195,161.36 and sold it to MBN for $400,000.[2] Defendant signed the warranty deed on behalf of Plaza 2000 as its "sole member." Defendant testified that he had to sell the Wyoming property because the Roses Plaza

---

[2] After closing costs and other expenses incurred "for clearing title," defendant received $104,564.89 in the transaction.

property that he was awarded in the divorce was cross-collateralized with the Wyoming property owned by Plaza 2000, such that loss of the Wyoming property in foreclosure would cause him to lose the Roses Plaza property. Plaintiff filed suit, and defendant filed a counterclaim. Both parties filed motions for summary disposition concerning plaintiff's claims. The court granted summary disposition in favor of plaintiff with respect to her breach-of-contract claim only and, following an evidentiary hearing on the issue of damages, entered an order awarding plaintiff $218,635.92 and closing the case.

## II. SUMMARY DISPOSITION

On appeal, defendant argues that the trial court should have granted summary disposition in his favor because (1) plaintiff lacked standing; (2) the redemption period expired without plaintiff or Plaza 2000 redeeming the property; (3) the doctrine of anticipatory breach applied, and defendant had to mitigate his damages; and (4) plaintiff failed to prepare the documents required to transfer Plaza 2000. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Plaintiff moved for summary disposition under MCR 2.116(C)(10). The applicable standard of review is as follows:

> A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A motion pursuant to MCR 2.116(C)(10) is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [I]t is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition. [*Id.* (quotation marks and citations omitted; alteration in original).]

Defendant also claims that the court should have granted him summary disposition under MCR 2.116(C)(5) because plaintiff lacked standing. "Review of a determination regarding a motion under MCR 2.116(C)(5), which asserts a party's lack of capacity to sue, requires consideration of 'the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties.' " *McHone v Sosnowski*, 239 Mich App 674, 676; 609 NW2d 844 (2000) (citation omitted). "[W]hether a party has standing to bring an action is a question of law reviewed de novo." *Franklin Historic Dist Study Comm v Village of Franklin*, 241 Mich App 184, 187; 614 NW2d 703 (2000).

Additionally, a consent judgment of divorce is a contract and construed using general principles of contract interpretation. *Rose v Rose*, 289 Mich App 45, 49; 795 NW2d 611 (2010). This Court reviews the interpretation of a contract de novo. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005).

## A. STANDING

Defendant first argues that he should have been granted summary disposition under MCR 2.116(C)(5) because the Wyoming property was previously owned by Plaza 2000 and plaintiff, in her individual capacity, "was not a proper party plaintiff and lacked standing to maintain the complaint . . . ." He asserts that plaintiff's complaint should have been dismissed and refiled in the name of Plaza 2000. However, defendant fails to support his argument with citation to any legal authority. "A party may not simply announce its position and 'leave it to this Court to discover and rationalize the basis for the party's claim.' " *Badiee v Brighton Area Sch*, 265 Mich App 343, 357; 695 NW2d 521 (2005). Consequently, we consider this issue abandoned. *Tyra v Organ Procurement Agency of Mich*, 498 Mich 68, 88; 869 NW2d 213 (2015); *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 619; 692 NW2d 388 (2004).

Even if defendant had properly presented this issue for review, we would conclude that it lacks merit. Standing refers to "a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy," and requires "a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large." *Attorney General v Mich Pub Serv Comm*, 243 Mich App 487, 494; 625 NW2d 16 (2000) (quotation marks and citation omitted). Plaintiff clearly has an interest in enforcing her contractual rights under the consent judgment of divorce. And despite defendant's contention that Plaza 2000 is the only entity with an interest in the Wyoming property,[3] plaintiff's cause of action seeks damages for breach of the parties' consent judgment, a contract in which plaintiff—and not Plaza 2000—was a party.

## B. REDEMPTION PERIOD

Defendant also argues that, assuming plaintiff had been allowed to amend her complaint to substitute Plaza 2000 as the plaintiff, neither Plaza 2000 nor plaintiff could maintain the action because they failed to redeem the Wyoming property within the statutory redemption period and therefore lacked the capacity to sue. We disagree. Defendant's argument is unsupported by the record. According to the redemption certificate filed with the register of deeds on September 11, 2014, Plaza 2000 redeemed the Wyoming property for $195,161.36 on March 21, 2014. Even if defendant was responsible for the redemption, it was completed on behalf of Plaza 2000. Accordingly, defendant's argument lacks merit.

---

[3] We further note that defendant's argument appears to confuse the concept of standing with the requirement that a cause of action be brought by the real party in interest. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 356; 833 NW2d 384 (2013) ("The real-party-in-interest rule requir[es] that the claim be prosecuted by the party who by the substantive law in question owns the claim asserted . . . .") (quotation marks and citation omitted; alteration in original).

C.  BREACH OF CONTRACT

Next, defendant argues that the trial court erred in granting plaintiff summary disposition because plaintiff committed an anticipatory breach, thereby requiring defendant to sell the Wyoming property in order to mitigate his damages.  Defendant relies on Paragraph 32 of the consent judgment, which required the parties to assume and pay any lien, encumbrance, or obligation on property awarded to them, as well as his own testimony alleging that plaintiff refused to redeem the Wyoming property from foreclosure.  Defendant also argues that the trial court erred by reading into the agreement a requirement that he prepare conveyance documents transferring Plaza 2000 to plaintiff.

With respect to the latter argument, Paragraph 22(e) of the consent judgment reads: "Defendant agrees to transfer his ownership interest in Plaza 2000 to Plaintiff.  He shall cooperate with executing all necessary documents to transfer his interest immediately."  Later, in Paragraph 36, the consent judgment provides that "[t]he parties must properly execute and promptly deliver to each other documents required to carry out the terms of this judgment."  Thus, we agree that there is no express provision imposing the burden of preparing transfer documents on defendant.  Yet we must also note that the contractual language does not impose that burden on plaintiff either.  Instead, the terms of the consent judgment are simply silent on this matter.  While it is true that "[a] party cannot be bound to an obligation that, although reasonably expected, is not actually covered by the terms of the agreement," *Casey v Auto Owners Ins Co*, 273 Mich App 388, 397; 729 NW2d 277 (2006), the context in which this issue arises is somewhat unique, as this Court has previously held that a trial court may "fill voids in an incomplete consent judgment" of divorce, "and in doing so must balance the equities insofar as is possible under the circumstances," *Andrusz v Andrusz*, 320 Mich App 445, 453; 904 NW2d 636 (2017).  Thus, even though the consent judgment did not address who was responsible for preparing the necessary transfer documents, we will not fault the trial court for imposing that duty on defendant, particularly where the consent judgment imposed an affirmative duty on defendant to transfer his ownership interest in Plaza 2000.  Defendant was the sole member of Plaza 2000 and was therefore in a better position to know any operational intricacies unique to Plaza 2000 that would need to be addressed in carrying out the transfer.  Additionally, because the consent judgment unambiguously required defendant to "transfer his ownership interest in Plaza 2000," and it is undisputed that he failed to do so, the trial court did not err by concluding that defendant breached the consent judgment.

Defendant also argues that the trial court erred by denying his motion for summary disposition, and granting plaintiff's motion instead, because plaintiff committed an anticipatory breach.  "Under the doctrine of anticipatory breach, if a party to a contract, prior to the time of performance, unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Paul v Bogle*, 193 Mich App 479, 493; 484 NW2d 728 (1992) (quotation marks and citation omitted).  Notably, although defendant filed several counterclaims in this action, breach of contract was not among them.  Nonetheless, "one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Able Demolition v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (quotation marks and citation omitted).

The record contains conflicting evidence concerning plaintiff's alleged anticipatory breach. Defendant testified that he told plaintiff about the foreclosure of the Wyoming property and the effect foreclosure would have on his cross-collateralized property. According to defendant, plaintiff said she had no interest in the Wyoming property, had no intention of redeeming it, and gave him permission to do whatever he wanted with the property. Plaintiff, on the other hand, testified that defendant disclosed the impending foreclosure to her, but did not produce any paperwork to substantiate his assertions. However, she did not redeem the Wyoming property, despite being willing and able to do so, because defendant would not give her any information. Plaintiff maintained that she wanted the Wyoming property and denied telling defendant that she would not redeem it. Thus, there appears to be a question of fact concerning whether plaintiff committed a breach by unequivocally declaring her intent not to perform, i.e., refusing to abide by Paragraph 32 of the consent judgment, specifying that "[a]ny lien, encumbrance, or obligation on any property awarded must be assumed and paid by the party receiving it . . . ."

Despite the contradictory evidence offered on this point, we conclude that the trial court properly granted plaintiff's motion for summary disposition because whether plaintiff unequivocally declared her intent to breach the requirements of Paragraph 32 was not material to the resolution of plaintiff's breach-of-contract claim or defendant's anticipatory-breach defense. A breach of contract by a party seeking judicial relief will only bar that party's claim if the breach is both substantial and first in time. *Id*. As previously noted, Paragraph 22(e) of the consent judgment provided: "Defendant *agrees to transfer* his ownership interest in Plaza 2000 to Plaintiff. He shall cooperate with executing all necessary documents to *transfer his interest immediately*." While this provision is perhaps inartfully phrased, it conveys a clear intent that defendant was to transfer his interest in Plaza 2000—an interest that would necessarily include Plaza 2000's ownership of the Wyoming property—without delay. Defendant admits that he never transferred his interest in Plaza 2000 and, in fact, remained the sole member of the company during these proceedings. Thus, defendant clearly breached the parties' contractual agreement. And while defendant maintains that plaintiff committed an anticipatory breach by refusing to redeem the Wyoming property, he testified that he only discussed the impending loss of the property and plaintiff's intentions with regard to the same in March 2014, i.e., more than four months *after* entry of the consent judgment requiring his immediate transfer of Plaza 2000 to plaintiff. Thus, there is no material question of fact that defendant was the first to breach the consent judgment. As such, plaintiff's later alleged breach did not bar her cause of action, nor did it detract from the fact that plaintiff demonstrated entitlement to judgment as a matter of law on her breach-of-contract claim.

## III. FAILURE TO ADJUDICATE COUNTERCLAIMS

Next, defendant argues that the trial court abused its discretion when it entered a final order without adjudicating his counterclaims, despite bringing this procedural oversight to the court's attention in his motion for reconsideration. We agree.

We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018). " '[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes.' " *Id*., quoting *Saffian v Simmons*, 477 Mich 8, 12; 727

NW2d 132 (2007) (alteration in original). Under MCR 2.604(A), "an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties . . . ." The parties filed a number of dispositive motions before the trial court, all of which addressed the viability of plaintiff's claims. The counterclaims asserted by defendant were never addressed in the motions, dismissed by stipulation of the parties, nor ruled upon by the trial court. Because those claims remained pending at the time the trial court entered its March 8, 2018 judgment, the trial court should not have designated the judgment as a final order or closed the case. The trial court's failure to recognize or correct this oversight when the issue was raised by defendant in his motion for reconsideration clearly fell outside the range of reasonable outcomes and was, therefore, an abuse of discretion. Accordingly, we remand for further proceedings to address defendant's counterclaims.[4]

## IV. DAMAGES CALCULATION

Lastly, defendant argues that the trial court incorrectly calculated plaintiff's damages. Because it appears that the trial court conflated several of the figures involved in this case, we agree, in part, and remand for reevaluation of plaintiff's damages.

"The remedy for breach of contract is to place the nonbreaching party in as good a position as if the contract had been fully performed." *Corl v Huron Castings, Inc*, 450 Mich 620, 625; 544 NW2d 278 (1996). Plaintiff had the burden of proving her damages resulting from defendant's breach of the consent judgment of divorce. See *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003) ("The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach."). Generally, an award of damages is considered a finding of fact that is reviewed for clear error. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 177; 530 NW2d 772 (1995). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 171.

In calculating plaintiff's damages, the trial court made several findings. Although we will reorder those findings for the sake of clarity, the essence of the court's findings are as follows:

- The measure of plaintiff's damages should begin with the value of the Wyoming property, and the best evidence of the property's value was the $400,000 purchase price paid by MBN.

---

[4] This conclusion necessarily impacts our jurisdiction over this matter as an appeal as of right. See MCR 7.203(A). But in the interest of judicial economy, we exercise our discretion to treat defendant's appeal as on leave granted. *Detroit v Michigan*, 262 Mich App 542, 546; 686 NW2d 514 (2004).

- Because plaintiff was entitled to Plaza 2000 as of the date of the consent judgment of divorce (October 24, 2013), plaintiff did not have to "accept responsibility for those expenses that were incurred after that date."

- Had Plaza 2000 been transferred to plaintiff, plaintiff would have been obligated to assume the liens, encumbrances, and obligations that had been specifically disclosed in the divorce proceedings, but only the first mortgage was disclosed by defendant. Thus, despite defendant's contention that there were additional mortgages on the property, plaintiff's damages should not be reduced by amounts necessary to pay off any additional undisclosed mortgage debts. Plaintiff, however, remained responsible for satisfying the first mortgage.

- As a result of defendant's failure to transfer Plaza 2000 to plaintiff, plaintiff was never given the opportunity to avoid the mortgage foreclosure and sheriff's sale. Therefore, plaintiff had no responsibility for costs, interest, and fees associated with the sale or redemption of the property from Oasis Trust, the entity that purchased the property at the sheriff's sale.

- Notwithstanding defendant's failure to disclose outstanding tax liabilities associated with the Wyoming property, plaintiff "would surely know" that the property "comes with any taxes, penalties and interest that may have accrued." Accordingly, plaintiff's damages would be reduced by amounts defendant paid for past due taxes, penalties, and interest.

The trial court relied on documents introduced at an evidentiary hearing and awarded damages based upon the following calculations: $400,000 (MBN purchase price) minus $181,364.08 (mortgage redemption price, less what the court determined were fees paid to Oasis Trust), for a total of $218,635.92 in damages. Recognizing that it could not return the income producing property to plaintiff, the trial court clearly attempted to place plaintiff in as good a position by awarding her the value of the property, less those amounts she would have been required to pay had defendant performed his contractual obligation to immediately transfer Plaza 2000. Accordingly, we find no error in the trial court's determinations concerning the method of calculating plaintiff's damages.

On appeal, defendant argues that plaintiff's damages should have been reduced to $165,104.68[5] to account for (1) $195,329.98 required to satisfy the first mortgage; (2) $4,010.75 for a final water bill; (3) $37,520.49 in delinquent taxes for 2012 and 2013; and (4) $25,000 defendant paid to satisfy a third mortgage. The trial court agreed with defendant's contention that plaintiff's damages should be reduced by the amount necessary to satisfy the first mortgage.

---

[5] This figure was offered by defendant following his concession concerning the "$13,000 that the [trial court] initially deducted from the First Mortgage" (in actuality, the trial court reduced the redemption price by $13,797.28); we express no opinion as to the mathematical accuracy of defendant's calculations.

Defendant alleges that plaintiff was responsible for $195,329.98 for this purpose. We disagree. Defendant extracted this figure from the closing statement prepared when he sold the property to MBN. Defendant's reliance on this figure is misplaced in light of the trial court's determination that plaintiff was not responsible for costs, interest, or fees associated with the sale or redemption of the property. The Wyoming property was sold at sheriff's sale for $180,615.14. Thus, the closing statement figure clearly reflects costs, interest, and fees incurred as a result of the foreclosure and redemption.

That being said, we must note that the trial court used the redemption price of $195,161.36 in its calculations, which was inconsistent with its determination that plaintiff was not obligated to pay costs arising from the sheriff's sale or redemption. It appears that the trial court began with this figure and subtracted $13,797.28 (the $108.64 per diem interest rate charged by Oasis Trust multiplied by the 127 days that elapsed between the sheriff's sale and redemption), in an attempt to account for accrued property taxes, while excluding costs associated with the sheriff's sale and redemption. While we applaud the trial court's effort to accurately apportion each party's liabilities, it appears that the trial court misunderstood the source of the figures used in its calculations and mistakenly conflated amounts associated with redeeming the property from tax forfeiture and amounts paid to redeem the property from the mortgage foreclosure.

According to the records submitted to the trial court, the Wyoming property was sold to Oasis Trust at a sheriff's sale on November 14, 2013, for $180,615.14. Oasis Trust filed an affidavit indicating that the property could be redeemed for "$180,615.14, plus interest at a rate of 22% from the date of sale; at a per diem amount of $108.64 to the date of redemption, plus any additional amounts" permitted by statute. Plaza 2000 redeemed the property for $195,161.36 on March 21, 2014. Separate from and in addition to the mortgage foreclosure and redemption, on March 1, 2014, the property was forfeited to the Wayne County Treasurer for nonpayment of 2012 real property taxes. Acting on defendant's behalf, a title company paid $19,836.39 to the Wayne County Treasurer on March 28, 2014, in order to have the certificate of forfeiture discharged. In calculating plaintiff's damages, the trial court determined that the difference between the $19,836.39 tax redemption amount and the per diem interest rate charged by Oasis Trust, totaling $13,797.28 for 127 days, represented the taxes, together with penalties and interest, for the property. The trial court's finding was clearly erroneous in this regard, as it failed to recognize that the entire $19,836.39 redemption figure represented delinquent taxes, penalties, interest, and fees for the 2012 tax year. Further, by beginning with the mortgage redemption figure—$195,161.36—and subtracting $13,797.28 for the daily interest charged by Oasis Trust, the trial court did not account for the additional amounts Oasis Trust was permitted to charge by statute. Assuming the amount paid by Oasis Trust at the sheriff's sale was a full-credit bid, it is that price—$180,615.14—that more accurately represents the amount plaintiff would have been required to pay to satisfy the first mortgage.

Turning to defendant's second argument on appeal, the trial court did not address the final water bill in its calculations, and it is unclear what period of time the water bill covered. Because a remand is necessary in any event, we direct the trial court to address in the first instance what, if any, portion of the water bill should be attributed to plaintiff.

Next, defendant argues that the plaintiff's damages should have been reduced by $37,520.49 for delinquent taxes. Again, defendant extracts this figure from the closing statements prepared for the MBN sale. As already noted, the 2012 delinquent taxes, including interest, fees, and penalties, totaled $19,836.39. Because the trial court determined that plaintiff was responsible for property taxes, and the 2012 taxes were clearly incurred before the consent judgment was entered on October 24, 2013, we agree that $19,836.39 should be subtracted from plaintiff's total damages. However, as it relates to the 2013 taxes, we infer from the trial court's conclusion that plaintiff had no "responsibility for those expenses that were incurred after" entry of the consent judgment on October 24, 2013, that some proration may be called for.[6] The trial court should address this issue further on remand.

Lastly, defendant argues that plaintiff's damages should be reduced by $25,000, i.e., the amount he paid to satisfy a third mortgage on the Wyoming property. We disagree. The trial court determined that, apart from the property taxes, plaintiff was only obligated to pay for the liens, encumbrances, or debts that had been specifically disclosed by defendant in the divorce proceedings. Defendant's financial statement from the divorce proceedings is part of the lower court record, and it clearly refers only to the first mortgage. Although defendant testified that plaintiff was aware of the third mortgage, the trial court apparently found defendant's testimony incredible, and we must defer to the trial court's credibility determinations for purposes of appellate review. *Andrusz*, 320 Mich App at 455. As such, we are unpersuaded by defendant's argument concerning the third mortgage.

In sum, because the court's mathematical calculations were clearly erroneous, we are compelled to remand this matter for recalculation of plaintiff's damages, though we find no error in the trial court's methodology. On remand, the trial court is free to reopen the proofs to aid its calculations.

## V. CONCLUSION

We affirm the trial court's order granting summary disposition as to plaintiff's breach-of-contract claim, but vacate the trial court's order awarding damages to plaintiff and closing the

---

[6] We recognize that if defendant had performed his obligation to promptly transfer Plaza 2000 to plaintiff, plaintiff would have been responsible for taxes incurred after October 24, 2013. Plaintiff, however, would also have been free to retain an income producing property that, according to record evidence, is now yielding over $50,000 in profits annually. Because plaintiff was deprived of that opportunity by defendant's breach, we find no error in the trial court's decision to limit the setoff of plaintiff's damages by excluding expenses incurred after entry of the consent judgment.

case. On remand, the trial court is directed to properly adjudicate defendant's counterclaims and recalculate plaintiff's damages consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica